COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-128-CV

 

CITY OF THE COLONY, TEXAS                                              APPELLANT

                                                      V.

 

NORTH TEXAS MUNICIPAL WATER                                        APPELLEES

DISTRICT
AND CITY OF FRISCO,

TEXAS

 

                                                    AND

 

CITY OF FRISCO, TEXAS                                                      APPELLANT

 

                                                      V.

 

CITY
OF THE COLONY, TEXAS                                                    APPELLEE

 

                                                    AND

 

NORTH TEXAS MUNICIPAL WATER                                       APPELLANT

DISTRICT

                                                      V.

 

CITY OF THE COLONY, TEXAS                                                    APPELLEE



                                                                                                           

 

                                                  ------------

 

              FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                                  ------------

 

                                                OPINION

 








                                                  ------------

I.  Introduction

City of The Colony, Texas,
entered into a tri-party contract (the AContract@) in 1998
with City of Frisco, Texas, and North Texas Municipal Water District (Athe District@) for, among
other things, the construction and operation of a regional wastewater system
for the purpose of providing a facility to treat wastewater from both
cities.  The Colony made contractually
required payments to the District for a number of years.  But ultimately, it never delivered any of its
wastewater to the District for treatment, it ceased making payments to the
District, and it sued the District and Frisco for breach of contract, for a
declaratory judgment that no contract was formed, and alternatively, for
rescission of the Contract.








With the exception of one of
The Colony=s contract
claims, the trial court granted the District=s first amended motion for summary judgment on The Colony=s causes of action.  With the
exception of the amount of damages and attorneys= fees to be awarded Frisco, the trial court granted Frisco=s motion for summary judgment on The Colony=s causes of action and on Frisco=s breach of contract counterclaim. 
The remaining claims or outstanding issues went to trial.  In addition to findings regarding attorneys= fees, a jury subsequently found that the District had materially
breached the Contract for failing to have adequate capacity but that the breach
was excused because The Colony had previously failed to comply with a material
obligation of the Contract and that The Colony owed $0.00 to Frisco for The
Colony=s failure to comply with the Contract. 
The Colony, the District, and Frisco each filed a notice of appeal.

In three issues, The Colony
argues that the trial court erred by granting Frisco=s motion for summary judgment and the District=s motion for summary judgment and that certain subsequent trial court
rulings based upon the summary judgment rulings caused the rendition of an
improper judgment.  In two issues, Frisco
argues that the evidence is legally and factually insufficient to support the
jury=s findings that The Colony owed Frisco $0.00 for The Colony=s failure to comply with the Contract and that Frisco was entitled to
$0.00 for Frisco=s appellate
attorneys= fees.  And in three issues, the District argues that
the trial court erred by overruling its motion to disregard the jury=s finding that it materially breached the Contract and that the
evidence is legally and factually insufficient to support the jury=s findings that the District breached the Contract and that the
District was entitled to $0.00 for attorneys= fees.  As to The Colony=s appeal, we will affirm.  As to
Frisco=s appeal, we will affirm in part and reverse and render in part.  As to the District=s appeal, we will affirm.

II.  Factual and Procedural Background and
Contract Excerpts








Lanny Lambert served as The
Colony=s city manager from the summer of 1997 to October 2000.  According to Lambert, The Colony=s mayor and city council wanted to participate with the District in
the creation of a regional wastewater treatment system.  At the time, The Colony treated its
wastewater at its Stewart Creek treatment plant, but the mayor and city council
wanted to join a regional system because they felt it was the most economically
feasible solution to The Colony=s increasing need for treatment capacity and because the existing
plant was aging, deteriorating, and had odor problems.  According to Lambert, A[O]ur goal at the time was to join the regional system.  We hoped to cut our costs and really to get
out of the sewer treatment business, pump all of our sewer to [the District]
and get out of the business.@  A reason for The Colony=s increasing need for wastewater treatment capacity was due to the
growth that the city was experiencing from the Austin Ranch and Wynnewood
Peninsula developments.  Lambert was thus
tasked with the assignment of negotiating an agreement with the District and
Frisco.[1]








Lambert met numerous times
with Carl Riehn, the District=s then executive director; George Purefoy, Frisco=s city manager; and a District engineer, among others, including
representatives from The Colony.  Through
his participation in the meetings, Lambert came to the understanding that The
Colony was Arequesting
to be allowed to participate@ in the regional system but that Frisco did not Aparticularly care or want [The Colony] to be involved@ even though it was Asomething [The Colony] wanted to do.@[2]  Lambert was told about a
border dispute that had occurred earlier in history between The Colony and
Frisco.

The Colony, Frisco, and the
District reached an agreement and executed the nineteen-page Contract,
entitled, AStewart
Creek West Regional Wastewater System Contract,@ on May 28, 1998.[3]

Relevant initial portions of
the contract are as follows:








WHEREAS,
there have been prepared for and filed with the District the following:  Report on a Proposed Regional Wastewater
System for the Cities of Frisco and The Colony . . . dated February,
1997, by Hunter Associates Texas, Ltd., Consulting Engineers, Dallas, Texas
(the AEngineering
Report@);
and

 

WHEREAS,
the parties hereto wish to further implement the Engineering Report and provide
for the acquisition, construction, improvement, operation and maintenance of a
Regional Wastewater System (the ASystem@) for
the purpose of providing facilities to adequately receive, transport, treat,
and dispose of Wastewater; and

 

. . . .

WHEREAS,
the Participants have deemed it necessary and desirable to contract with the
District to provide for the expansion of the Plant and the acquisition,
construction, improvement, operation and maintenance of the System to achieve
efficiencies of cost and operation; and

 

. . . .

WHEREAS, the parties hereto
recognize these facts:

(a)     That the District will use the payments to
be received under this Contract and similar contracts, if any, for the payment
of Operation and Maintenance Expense of the System and for the payment of the
principal of, redemption premium, if any, and interest on its Bonds
. . . .

 

. . . .

 

(c)     That the District will issue Bonds from
time to time in the future to acquire, construct, extend, enlarge, improve,
and/or repair the system.

 

Relevant definitions
contained in the Contract are as follows:








AAnnual
Payment@
means the amount of money estimated as provided in Section 5.03 of this
Contract to be paid to the District by Participants as their proportionate
share of the Annual Requirement.

 

AAnnual
Requirement@
means the total amount of money required for the District to pay all Operation
and Maintenance Expense of the System and to pay the principal of, and
redemption premium, if any, and interest on its Bonds . . . .

 

ADistrict=s
System,@ ARegional
System,@ ARegional
Wastewater System,@ or ASystem@
means all of the District=s
facilities acquired, constructed, used, or operated by the District for
receiving, transporting, treating, and disposing of Wastewater of and for
Participants, pursuant to this Contract (but excluding . . . any
facilities required to transport Wastewater to any Point of Entry of the
District=s
System) . . . .  Said terms shall
include only those facilities which are acquired, constructed, used, or
operated by the District to provide service to Participants pursuant to
this Contract . . . .

 

AParticipants@
means Frisco, The Colony and all Additional Participants.

 

APoint
of Entry@
means any point at which Wastewater enters the property on which any Wastewater
treatment plant operated by the District is located . . . .

 

AWastewater@
means Sewage, Industrial Waste, Municipal Waste, Recreational Waste, and
Agricultrual Waste, as defined in the Code, together with properly shredded
garbage, and such infiltration water that may be present.  [Emphasis added.]

 

Section 2.01, under the
heading AProviding of Facilities by the District,@ states in part as follows:








In
order to provide services for receiving, transporting, treating, and disposing
of Wastewater for Participants, the District will use its best
efforts to design, acquire, construct, and complete the System, as generally
described in the Engineering Report . . ., and will operate and
maintain the System, and from time to time enlarge, improve, repair,
replace, and/or extend the System to provide service to the Participants.
[Emphasis added.]

 

Relevant portions of the
Contract under Article III, entitled ADischarge of Wastewater and Metering,@ provide as follows:

Section
3.01.  DISCHARGE.  In consideration of the payments to be
made under its respective contract with the District, each of the Cities of The
Colony and Frisco have and shall have the right to discharge all of its
Wastewater from its respective sewer system into the District=s
system, provided that such Wastewater meets the requirements for quantity
and quality as set forth in its respective contracts with the District
. . . .

 

Section
3.02.  POINT OF ENTRY.  Each Participant may discharge all such
Wastewater generated from such Participant=s
sewer system into the designated Point or Points of Entry for
such Participant, unless such Participant and the District mutually agree that
like service can be provided elsewhere in the System.

 

Section
3.03.  CONVEYANCE TO POINT OF ENTRY.  It shall be the sole responsibility of each
participant to transport, or cause to be transported, at no cost to the other
Participants, its Wastewater to its Point or Points of Entry.  [Emphasis added.]

 

Relevant portions of the
Contract under Article V, entitled APayments,@ are as
follows:

Section
5.01.  FINANCING.  The District will issue its Bonds, in amounts
and at times as determined by the District, to provide the System.

 

Section
5.02.  ANNUAL REQUIREMENT.  It is acknowledged and agreed that  payments to be made under this Contract will
be the only source available to the District to provide the Annual Requirement;
. . . .








Section
5.03.  PAYMENTS BY CITY.  (a) For services to be rendered to each
Participant by the District under this Contract and other similar contracts, if
any, each Participant has agreed to pay, at the time and in the manner
hereinafter provided, its proportionate share of the Annual Requirement,
which shall be determined as hereafter described and shall constitute a
Participant=s
Annual Payment or Adjusted Annual Payment. . . .

 

. . . .

 

(d)     Each Participant=s Annual Payment also shall
be adjusted and redetermined for the balance of any applicable Fiscal Year,
consistent with the provisions of this contract, and initially based on
estimated contributing flow, at any time during any Fiscal Year if:

 

. . . .

 

 

(v)     It appears to the District that for any other reason it will not
receive the full amount of the Annual Requirement unless such adjustment and
redetermination are made.

 

. . . .

 








(h)     . . . 
Recognizing the fact that the Participants urgently require the
facilities and services covered by this Contract, and that such facilities and
services are necessary for actual use and for stand-by purposes; and further
recognizing that the District will use the payments received from the
Participants hereunder to pay, secure, and finance the issuance of its Bonds, it
is hereby agreed that the Participants shall be obligated unconditionally, and
without offset or counterclaim, to make the payments designated as the ABond
Service Component@ of
the Annual Requirement, in the manner provided in this Contract, regardless of
whether or not the District actually provides such facilities and services, or
whether or not any Participant actually receives or uses such facilities and
services, and regardless of the validity or performance of the other parts of
this or any other contract . . . .  Each Participant further agrees that it shall
be obligated to make the payments designated as the AOperation
and Maintenance Component@ of
the Annual Requirement . . . .

 

(i)      . . .  Each
Participant agrees that it will make such payments to the District on or before
the twentieth (20th) day of each month of such Fiscal Year.  If any Participant shall dispute the Annual
Budget, and proceed as provided in Article VII, such Participant nevertheless
promptly shall make the payment or payments determined by the District
. . . . [Emphasis added.]

 

Relevant portions of the
Contract under Article VIII, entitled AThe System,@ are as
follows:

Section
8.01.  INITIAL FACILITIES OF THE
SYSTEM.  (a) The System shall
initially consist of the Plant.

 

(b)     . . . . [T]he District and the Participants agree that
this Contract shall constitute an operating agreement with respect to the Plant
. . . .  [Emphasis added.]

 

Section 11.01 of the Contract
provides that the Contract shall become effective as of the date of its
execution.








The Contract thus
demonstrates that The Colony, Frisco, and the District entered into an
agreement for the District to operate the Stewart Creek West Plant (the Aplant@) for the
purpose of treating The Colony=s and Frisco=s
wastewater, which they were required to transport at their sole responsibility
and discharge to the designated point of entry, in exchange for The Colony=s and Frisco=s annual
payments to the District.  The Contract
further required the District to use The Colony=s and Frisco=s annual
payments to repay the principal and interest on the bonds issued to finance the
agreed plant expansion and to pay for the system=s operation and maintenance expenses.








Absent from the ContractCand at the heart of the underlying litigationCis a specific recitation of how The Colony and Frisco were to
transport their wastewater to the point of entry, which is located at the plant
and is within Frisco=s
borders.  Because the point of entry is
located at the plant and because the plant is wholly within Frisco=s borders, pipelines running from portions of The Colony would
necessarily have to run through Frisco. 
According to Lambert, although there were Adiscussions@ in the
latter part of the meetings that he attended leading up to the execution of the
Contract concerning how The Colony planned to transport its wastewater to the
point of entry, this was a Asecondary issue@ at the
time; A[t]he purchase of capacity was the major victory.@  The actual negotiations
between The Colony and Frisco regarding the means by which The Colony was to
transport its wastewater to the point of entry were to be conducted at some
point after the Contract=s execution, and the final agreements concerning the same would be
documented in another written contract. 
Lambert thus did not begin those negotiations before leaving The Colony,
but he understood that it was the District=s obligation to build, maintain, and operate the plant and that The
Colony was responsible for transporting its wastewater to the point of entry.

At the time of the Contract=s execution, the only Aaccess@ that The
Colony had to the plantCin terms of
transporting its wastewater thereto (excluding the Aludicrous@ option of
transporting wastewater by truck)Cwas via an old pipeline that ran between The Colony=s Stewart Creek Plant and the plant. 
Lambert, however, Anever really
spent any time researching that option,@ and he did not Aremember why
it was there or what it was for.@  Therefore, at the time of the
Contract=s execution and with the exception of the old pipeline that Lambert
had not anticipated utilizing for transporting The Colony=s wastewater to the plant, The Colony had not physically built the
infrastructure or pipelines necessary to transport wastewater to the
plant.  Based on the discussions that he
had before the Contract was executed, Lambert thought The Colony was going to
attempt to implement the 1997 report prepared by Hunter Associates Texas, Ltd.
and referenced at the beginning of the Contract, otherwise referred to as the Ared book.@  The Ared book@ proposed plans
for transporting The Colony=s wastewater in part by laying pipelines from Wynnewood Peninsula and
Austin Ranch to the plant.








During Lambert=s tenure as city manager, which ended in the fall of 2000, The Colony
did not need the capacity that it had purchased from the District. John
Dillard, The Colony=s mayor and
former city councilman, reasoned that A[w]hen we entered into the Contract, we had no need of their services
at that time@; instead, Awe had entered into an agreement to pay them for future services.@  Johnston shared Dillard=s recollection, agreeing that The Colony acquired capacity in the
plant in 1998 for future use.  Lambert
therefore anticipated there being a period of time, possibly until 2003 or
2004, in which The Colony made contractual payments but had none of its
wastewater treated at the plant.

After execution of the
Contract, the District sold $7,125,000 in bonds 
that it utilized to fund the plant expansion.  It completed the expansion sometime in
January 2001.  The expansion increased
the plant=s wastewater
treatment capacity from 1.5 million gallons per day to a total capacity of 5
million gallons per day.








The Colony made its first
payment under the Contract on or about March 1, 1999.  After Lambert left his position as city
manager of The Colony, he became a consultant for The Colony for six
months.  Within three months of Lambert=s departure from The Colony, he instructed Johnston that he (The
Colony) needed to Aget the
system going@ and Ainitiate the infrastructure into the ground.@  Johnston understood Lambert=s instruction to mean that The Colony was Ato begin routing wastewater to the Stewart Creek West plant.@ In furtherance of Lambert=s instructions, between February and June 2001, Johnston contacted the
District; met with the Billingsley Corporation, who developed the Austin Ranch
property; contacted an individual with Matthews Southwest, the developers of
Wynnewood Peninsula; met with The Tomlin Property, who owned the portion of
Wynnewood Peninsula inside Frisco; and contacted Frisco.  Johnston also introduced Dale CheathamCThe Colony=s city
manager as of August 1, 2001Cto Jim Parks, the District=s Executive Director.  The
Colony had a number of meetings with the District regarding wastewater
transportation thereafter.








Notwithstanding the Ared book,@ The Colony
eventually hired the engineering firm of Freese and Nichols, Inc. to prepare a
report setting forth various alternatives for routing wastewater to the
plant.  Johnston informed James Baddaker,
a
Freese and Nichols engineer, about a few Aissues@ that
existed between The Colony and Frisco, and Baddaker gained an understanding Athat there may have been impediments to The Colony utilizing or
sharing facilities with Frisco in order to get their wastewater flow to the
point of delivery at the North Texas plant.@  The Aissues@ and Aimpediments@ that
Baddaker learned of concerned an unresolved territorial dispute between The
Colony and Frisco in which Frisco apparently claimed that The Colony had
wrongfully annexed two pieces of land in the 1980s referred to as the Alightning bolt@ and the Afinger.@  According to Cheatham, although The Colony=s actions Ahave
subsequently been validated by the State, and they are legal now,@ Frisco was Aupset@ about it and had asked for the land back.  With this considered, the Freese and Nichols
report, which is dated August 8, 2003, concluded that there were several
options for treating The Colony=s wastewater, and it evaluated a number of scenarios that The Colony
could have implemented to transport its wastewater to the plantCsome of which involved Frisco=s cooperation and some which did not.[4]  The report also included Atimelines,@ one of
which projected that it would take 684 days to complete a system capable of
transporting 1.1 million gallons of wastewater per day from The Colony=s treatment plant to the plant.








The Colony ultimately Amore or less@ adopted an
alternative plan of AScenario 1,@ which involved transporting 1.1 million gallons of wastewater per day
to be treated by the District.  Freese
and Nichols completed the surveying on the project but were told by The Colony
thereafter to stop work.  The Colony did
not undertake steps to follow any of the other scenarios set forth in the
report, some of which provided plans for diverting wastewater from Austin Ranch
and Wynnewood Peninsula to the plant, and it never constructed wastewater lines
that would enable it to transport its wastewater to the plant. Instead, it
awarded a contract sometime in January 2005 to modify its own wastewater
treatment plant at a cost of between $12 and $13 million.  The Colony never sent any of its wastewater
to the plant for treatment by the District, but the District never denied The
Colony its right to access capacity in the plant.

The Colony paid approximately
$800,000 to the District from 1999 to 2004 and then ceased making payments
under the Contract.  Frisco thereafter
became responsible for The Colony=s share of the payments.  Frisco
paid $642,863.98 of The Colony=s payments due under the Contract.








The Colony filed suit in June
2004.  It claimed in part the following
in its third amended petition: AIn 2002, the Environmental Protection Agency and Texas Commission on
Environmental Quality advised Plaintiff that its current wastewater treatment
was inadequate, and gave The Colony a twenty-four month deadline for coming
into compliance with all applicable regulations@; AFrisco
refused to grant access easements or otherwise cooperate unless The Colony
would also convey part of its territory to@ Frisco; the District advised The Colony that Ait could not treat The Colony=s wastewater@ at the
plant; the District Aoffered The
Colony an opportunity to participate in a newly expanding region at an
additional cost of approximately $170,000,000, of which [The Colony] would pay
its proportionate share@; Aboth Defendants attempted to negotiate new terms that were materially
different from those in the original agreement@; and A[b]oth
defendants were unready, unwilling, and unable to abide by the terms of the
original agreement.@








The Colony sought a
declaration that no contract was formed because (1) there was no meeting of the
minds regarding a material feature of the Contract, (2) the promise of the
District was illusory and created no mutuality of obligation, (3) the terms of
the Contract were vague, ambiguous, and not sufficient to bind either
defendant, (4) the Contract violates state law, and (5) the Contract violates
public policy.  The Colony further sought
a declaration that it was entitled to the quasi-contractual remedy of unjust
enrichment. Alternatively, Ain the event [the] court [found] that a valid contract was formed,@ The Colony sought a declaration that it was entitled to rescind the
Contract because (1) there was a failure of consideration, (2) there was a
mutual mistake of material fact, (3) the opposing parties expressed an intent
not to perform their obligations, (4) there was a unilateral mistake by The
Colony, and (5) one or more of the defendants have been unjustly enriched.  In addition to asserting a promissory
estoppel claim and a request for attorneys= fees, The Colony sought a declaration that its liability under the
Contract had been released and extinguished by the defendants= failure to perform in addition to a Awrit of mandamus@ A[u]pon the issuance of declaratory relief.@  The Colony=s first supplemental petition further alleged a claim for breach of
contract against both Frisco and the District. 
According to Cheatham, The Colony wants the money it paid under the
Contract back, and it wants to be removed from the Contract.








Frisco moved for summary
judgment on both traditional and no evidence grounds on all of The Colony=s claims, and it moved for summary judgment on its breach of contract
counterclaim.  The District moved for
summary judgment on traditional grounds on all of The Colony=s claims, but it asserted no evidence grounds for summary judgment on
only some of The Colony=s claims.[5]  With a few exceptions, discussed below, the
trial court granted Frisco=s and the District=s motions for summary judgment. 
This appeal followed the trial.

III.  Motions
for Summary Judgment

In its first and second
issues, The Colony challenges the trial court=s grant of summary judgment in favor of Frisco and the District on The
Colony=s claims and in favor of Frisco on Frisco=s breach of contract counterclaim.

A.     Standards of Review

The no evidence summary
judgment standard of review provides that, after an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.  Tex. R.
Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 207 (Tex. 2002).  The trial court
must grant the motion unless the nonmovant produces summary judgment evidence
that raises a genuine issue of material fact. 
See Tex. R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co. v.
Grant, 73 S.W.3d 211, 215 (Tex. 2002).








When reviewing a no evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan,  199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no evidence summary judgment is not proper.  Moore v. K Mart Corp., 981 S.W.2d 266,
269 (Tex. App.CSan Antonio
1998, pet. denied).

Under the traditional motion
for summary judgment standard of review, the issue on appeal is whether the
movant met the summary judgment burden by establishing that no genuine issue of
material fact exists and that the movant is entitled to judgment as a matter of
law.  Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co. v.
Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.

When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  The summary judgment will be affirmed only if
the record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of
action or defense as a matter of law.  Clear
Creek Basin, 589 S.W.2d at 678.








A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004).  Once the defendant
produces sufficient evidence to establish the right to summary judgment, the
burden shifts to the plaintiff to come forward with competent controverting
evidence raising a genuine issue of material fact with regard to the element
challenged by the defendant.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).

A defendant is entitled to
summary judgment on an affirmative defense if the defendant conclusively proves
all the elements of the affirmative defense. 
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); see
Tex. R. Civ. P. 166a(b),
(c).  To accomplish this, the
defendant-movant must present summary judgment evidence that establishes each
element of the affirmative defense as a matter of law.  Ryland Group, Inc. v. Hood, 924 S.W.2d
120, 121 (Tex. 1996).

A plaintiff is entitled to
summary judgment on a cause of action if it conclusively proves all essential
elements of the claim.  See Tex.
R. Civ. P. 166a(a), (c); MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).








When a party moves for
summary judgment under both rules 166a(c) and 166a(i), we will first review the
trial court=s judgment
under the standards of rule 166a(i).  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).[6]          B.      DeclarationCNo Contract Formed Claims

The Colony sought a
declaration that no contract was formed because there was no meeting of the
minds, the terms of the Contract are vague and ambiguous, the promises involved
in the Contract are illusory and created no mutuality of obligation, the Contract
violates the Texas Government Code, and the Contract violates public policy.

1.      Meeting of the Minds     

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that no contract was formed because
there was no meeting of the minds.  The
District sought a summary judgment on this claim on traditional grounds only.








Parties enter into a binding
contract when the following elements exist: 
an offer; an acceptance in strict compliance with the terms of the
offer; a meeting of the minds; each party=s consent to the terms; and execution and delivery of the contract
with the intent that it be mutual and binding. 
Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex. App.CSan Antonio 1999, pet. denied). 
AMeeting of the minds@ describes the mutual understanding and assent to the agreement
regarding the subject matter and the essential terms of the contract.  Weynand v. Weynand, 990 S.W.2d 843,
846 (Tex. App.CDallas 1999,
pet. denied).  Mutual assent, concerning
material, essential terms, is a prerequisite to formation of a binding,
enforceable contract.  T.O. Stanley
Boot Co., Inc. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992).  Parties, however, may agree to the material
terms of a contract but leave other matters open for later negotiation; it is
only when an essential term is left open for future negotiation that no binding
contract exists.  Kelly v. Rio Grande
Computerland Group, 128 S.W.3d 759, 766 (Tex. App.CEl Paso 2004, no pet.); Komet v. Graves, 40 S.W.3d 596, 602
(Tex. App.CSan Antonio
2001, no pet.).  The determination of
whether there is a meeting of the minds, and thus offer and acceptance, is
based upon objective standards of what the parties said and did and not on
their subjective state of mind.  Copeland,
3 S.W.3d at 604.

 








a.      Frisco

The Colony=s sole argument that it raised a genuine issue of material fact on its
meeting of the minds claim is that Athe parties left the issue of access to the plant open for future
negotiation.@  It contends that the Contract did not set
forth where the pipelines would be located, the size of the pipelines, or the
timing of the pipeline installation.  The
Colony thus argues that a fact issue exists on this claim because there was no
meeting of the minds regarding how the parties were to transport their wastewater
to the plant.

The Contract indeed does not
set forth any details of how The Colony and Frisco are to transport their
wastewater to the plant.  Furthermore,
Lambert testified in his deposition that the parties agreed that the point of
entry would be at the plant itself but that the negotiations regarding how The
Colony intended to transport its wastewater to the point of entry was an issue
that was intended to be addressed after the Contract was executed.  Although the parties had discussions about Aaccess@ before the
Contract=s execution, Lambert expected the final agreements of how the
pipelines were to be constructed to be documented in another written contract.













Although this evidence is
undisputed, none of it raises a genuine issue of material fact that no contract
was formed for failure to achieve a meeting of the minds because the issue of
how The Colony was to transport its wastewater to the plant is neither an
essential term of the Contract nor part of the Contract=s subject matter; it is thus not a prerequisite for the Contract to be
binding and enforceable.  This is so
because the plain and unambiguous language of the Contract demonstrates that
the parties entered into an agreement for the District to provide access to the
plant and to treat The Colony=s and Frisco=s wastewater
in exchange for annual payments.  The
purpose of the Contract is accordingly treatmentCnot transportationCof wastewater.  Consistent with
this purpose, the Contract deliberately does not account for the means by which
wastewater is transported to the point of entry because that is beyond the
Contract=s scope.  Section 3.03 of the
Contract specifically provides that it is the Asole responsibility@ of The Colony and Frisco to transport their wastewater to the point
of entry.  The definitions of ADistrict=s System,@ ARegional
System,@ ARegional
Wastewater System,@ or ASystem@
additionally specifically exclude from their meaning Aany facilities required to transport wastewater to any Point of Entry
of the District=s System.@  Moreover, Lambert testified
that transportation of wastewater was a Asecondary issue@ at the time
of the Contract=s execution
and that the purchase of capacity was the Amajor victory.@  The Colony subjectively reads more into the
Contract than what is there, which is contrary to the objective standard by
which we are to view this meeting of the minds issue.  See id.  Because the issue of wastewater
transportation is not an essential or material term of the Contract, the
parties were free to, as they clearly did, leave this issue open for future
negotiation.  See Kelly, 128
S.W.3d at 766.  Accordingly, we hold that
The Colony failed to raise a genuine issue of material fact in response to
Frisco=s challenge to The Colony=s claim seeking a declaration that no contract was formed because
there was no meeting of the minds and that the trial court did not err by
granting Frisco=s motion for
summary judgment on this ground.  See Tex.
R. Civ. P. 166a(i).  We overrule this part of The Colony=s first issue.

b.      The District








We reach the same conclusion
regarding the District=s motion for
summary judgment on this ground.  The
District submitted as summary judgment evidence the Contract, Parks=s affidavit, and the deposition testimony of Lambert and Cheatham,
among other things.  As stated above, the
Contract shows that the parties entered into an agreement for the District to
provide wastewater treatment for The Colony and Frisco, and the Contract
specifically places the responsibility of transporting the wastewater to the
point of entry on Frisco and The Colony. 
Parks affirmed that A[t]he District did not enter into an agreement with The Colony to
construct its wastewater transmission lines@ and that A[n]o
District funds were available for the construction of the Colony=s wastewater transportation lines because the Contract expressly
placed the obligation for transporting The Colony=s wastewater upon The Colony.@  Consequently, A[h]ow the Colony was to transport its wastewater was outside of the
scope of the agreement[,] and no provision was made under the terms of the
Contract for [the District] to transport or provide for the transportation of[]
The Colony=s
wastewater.@ Lambert
testified that it was his understanding that The Colony was responsible for
transporting its wastewater to the plant and that the negotiations between The
Colony and Frisco regarding the utilization of existing pipelines and easements
would be conducted later.  And although
Cheatham thought the District had some obligation to make Frisco give The
Colony access to its lines, he agreed that, pursuant to section 3.03 of the
Contract, it was The Colony=s responsibility to get its wastewater to the plant.








The District having met its
summary judgment burden, The Colony relies on the same evidence and argument as
it does in the portion of its brief addressing Frisco=s motion for summary judgment on this ground.  Because there is no evidence that wastewater
transportation is an essential or material term of the Contract, we hold that
The Colony failed to raise a genuine issue of material fact in response to the
District=s challenge to The Colony=s claim seeking a declaration that no contract was formed because
there was no meeting of the minds.  See
Tex. R. Civ. P. 166a(c).  Accordingly, the trial court did not err by
granting the District=s motion for
summary judgment on this ground, and we overrule this part of The Colony=s second issue.      

2.      Vague and Ambiguous

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that no contract was formed because the
terms of the agreement are vague and ambiguous.  The District sought summary judgment on
this claim on traditional grounds only.








Our primary concern when
construing a written contract is to ascertain the true intentions of the
parties as expressed in the instrument.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Heil Co. v. Polar Corp.,
191 S.W.3d 805, 810 (Tex. App.CFort Worth 2006, pet. denied). 
This is achieved by examining and considering the entire writing in an
effort to harmonize and give effect to all provisions of the contract so that
none will be rendered meaningless.  Coker,
650 S.W.2d at 393.  We presume that the
parties to the contract intend every clause to have some effect.  Heritage Res., Inc. v. Nations Bank,
939 S.W.2d 118, 121 (Tex. 1996); XCO Prod. Co. v. Jamison, 194 S.W.3d
622, 627 (Tex. App.CHouston
[14th Dist.] 2006, pet. denied).  We give
terms their plain, ordinary, and generally accepted meaning unless the contract
shows the parties used them in a technical or different sense.  Heritage Res., 939 S.W.2d at 121.  When
we have the choice of construing a contract as valid or as void, we construe it
in such a way as to make it valid.  Mays
v. Pierce, 154 Tex. 487, 494, 281 S.W.2d 79, 82 (1955).

A contract that can be given
a definite or certain legal meaning is unambiguous as a matter of law.  J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003).  Lack of
clarity does not create an ambiguity, and a contract is not ambiguous simply
because the parties advance conflicting interpretations.  Universal Health Servs., Inc. v.
Renaissance Women=s Group,
P.A., 121 S.W.3d 742, 746 (Tex. 2003); Columbia
Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex.
1996). 
Rather, a contract is ambiguous when its meaning is uncertain or
is reasonably susceptible to more than one meaning.  Coker, 650 S.W.2d at 393.








In the event that two
provisions of a contract arguably conflict, courts apply rules of construction
to harmonize the provisions.  Ogden v.
Dickinson State Bank, 662 S.W.2d 330, 332 (Tex. 1983).  A specific provision controls over a general
provision.  Forbau v. Aetna Life Ins.
Co., 876 S.W.2d 132, 133B34 (Tex. 1994).  Where the
meaning of a contract is unambiguous, a party=s construction is immaterial.  718
Assocs. Ltd. v. Sunwest N.O.P., Inc., 1 S.W.3d 355, 360 (Tex. App.CWaco 1999, pet. denied). 
Regarding recitals in a contract, A[a]s a general rule, recitals . . . will not control the
operative clauses thereof unless the latter are ambiguous . . . .@  Gardner v. Smith, 168
S.W.2d 278, 280 (Tex. Civ. App.CBeaumont 1942, no writ).  A[W]here the recitals are broader than the contract stipulations, the
former will not extend the latter.@  Id.   

a.      Frisco

The Colony argues that it
raised a genuine issue of material fact that the Contract is vague and
ambiguous because the Contract is Asusceptible to multiple interpretations by differing experienced
professionals@ and because
Athe parties entered into the agreement with differing interpretations
regarding their respective rights and obligations.@  Thus, multiple interpretations
is the basis of The Colony=s arguments.








The Colony relies in part on
Johnston=s deposition testimony in which he explains the basis of his opinion
that the District breached the Contract. 
One reason that he thought the District breached the Contract was that
he interpreted the Contract as requiring the District to work with The Colony
in setting up pipelines by which to transport The Colony=s wastewater to the plant.  The
basis of Johnston=s
interpretation is the Ared book,@ which is mentioned at the beginning of the agreement pursuant to a AWhereas@ statement
that the Ared book@ has been Aprepared for
and filed with the District@ and that Athe parties
hereto wish to further implement the@ Ared book@ and Aprovide for
the acquisition, construction, improvement, operation and maintenance of a
Regional Wastewater System (the ASystem@) for the
purpose of providing facilities to adequately receive, transport, treat,
and dispose of Wastewater.@ [Emphasis added.]

The Colony also relies on the
deposition testimony of Cheatham to raise a fact issue.  In construing section 2.01, which provides
that the District Awill use its
best efforts to design, acquire, construct, and complete the System@ in order to Aprovide
services for receiving, transporting, treating, and disposing@ of wastewater, Cheatham testified that he thought the District had
not complied with the Abest efforts@ language because the pipelines set forth in the Ared book@ had not
been constructed yet. [Emphasis added.] 
According to Cheatham, the District had a responsibility to ensure that
the pipelines would be constructed by requiring Frisco to give The Colony access
to its existing pipelines and easements.








The Colony further relies on
Dillard=s deposition testimony in which he elaborated on his interpretation of
the Contract and on his opinions regarding the District=s failures to comply with the Contract.  Dillard opined that the District failed to
comply with the initial portion of the Contract stating that there has been a
report prepared (the Ared book@); that the parties wished to implement the report; and that they
would provide for the acquisition, construction, improvement, operation, and
maintenance of the System in order to provide facilities to adequately receive,
transport, treat, and dispose of wastewater. 
From the first page alone, Dilliard interpreted the Contract to require
the District to Abasically
acquire what=s necessary
for us [The Colony] to link up with their plant to become part of the regional
wastewater treatment plant, to include easements, the pipes, the pumping
station, and anything else necessary for us to receive services for the present
and the future.@

Dillard also opined that the
portion of the Contract stating that the District would issue bonds from time
to time in the future to acquire, construct, extend, enlarge, improve, Aand/or@ repair the
system imposes an obligation on the District to acquire easements and construct
the pipelines to facilitate The Colony=s transportation of its wastewater to the plant.  According to Dillard, the District is
supposed Ato design
it, they are to acquire and construct.@  The Colony, on the other hand,
is obligated to Adeliver the
effluent from our plant.  Our
responsibility is merely to provide the effluent.  They are to provide the design,
acquisition[,] and construction.@  Dillard opined that the
District Adid not
produce the hardware for their plant hookup.@








The Colony thus contends that
there is a fact issue concerning its vague and ambiguous claim based on the
multiple interpretations of the portions of the Contracts relating to (1)
implementation of the Ared book@ for, among other things, the purpose of transporting wastewater, (2)
the issuance of bonds to acquire and construct the System, and (3) the best
efforts that the District is to use to provide services for, among other
things, the transportation of wastewater. 
None of this evidence, however, raises a genuine issue of material fact
that the Contract is vague and ambiguous because each of the interpretations
conflict with the well established rules of contract construction set forth
above.








The interpretations ignore
the requirement that we ascertain the true intent of the parties by examining
and considering the entire Contract to give effect to all of the
Contract=s provisions.  See Coker,
650 S.W.2d at 393.  The Colony=s reliance on the portions of the Contract that they claim raise a
fact issue regarding multiple interpretations rests entirely upon a reading and
interpretation of those parts of the Contract in isolation.  Although there are initial portions of the
Contract that generally refer to implementation of the Ared book@ for the
purpose of transporting wastewater, the issuance of bonds to acquire and
construct the System, and the best efforts that the District is to use to
provide services for the transportation of wastewater, an examination of the entire
Contract demonstrates that it specifically addresses the issue of
transportation when it (1) clarifies that The Colony and Frisco are solely
responsible for transporting their wastewater to the point of entry, (2)
excludes facilities required to transport wastewater from the definition of ASystem,@ (3)
includes only those facilities that are acquired, constructed, used, or
operated by the District to provide wastewater treatment services in the
definition of ASystem,@ and (4) defines the ASystem@ as
consisting of the APlant@ and nothing else.  These are
specific provisions addressing the matter of wastewater transportation, and
they accordingly control over the general, isolated statements referring to Atransportation@ that The
Colony relies on.  See Forbau, 876
S.W.2d at 133B34.  

The Colony=s interpretations of the Contract are likewise adverse to the
presumption that the parties intended every clause of the Contract to have some
effect and additionally result in the rendering meaningless of significant
parts of the Contract specifically addressing wastewater transportation.  See Heritage Res., Inc., 939 S.W.2d at
121.  Thus, it is only when we examine
the entire Contract and give effect to all of its provisions that the true
intent of the parties regarding wastewater transportation is clearly
revealed:  the District promised to treatCnot transportCThe Colony=s and Frisco=s wastewater
in exchange for annual payments.








Moreover, The Colony cannot
raise a fact issue regarding the Contract=s alleged ambiguity simply by advancing the conflicting
interpretations of its city officials; the Contract is ambiguous only if it is Areasonably susceptible@ to more than one meaning.  See
Coker, 650 S.W.2d at 393.  None of
the interpretations advanced by The Colony are Areasonable@ because
they unquestionably conflict with fundamental rules of contract
construction.  Consequently, the Contract
is not reasonably susceptible to any of the interpretations proposed by The
Colony.  Indeed, conversely, our analysis
shows that the Contract is unambiguous as a matter of law because it can be
given a definite or certain legal meaning. 
See id.

We hold that The Colony
failed to raise a genuine issue of material fact in response to Frisco=s challenge to The Colony=s claim seeking a declaration that no contract was formed because the
terms of the agreement are vague and ambiguous and that the trial court did not
err by granting Frisco=s motion for
summary judgment on this ground.  See Tex.
R. Civ. P. 166a(i).  Accordingly, we overrule this part of The
Colony=s first issue.

b.      The District








The Colony relies on the same
evidence and argument as it does in the portion of its brief addressing Frisco=s motion for summary judgment on this ground.  We thus reach the same conclusion regarding
the District=s motion for
summary judgment on this ground.  We hold
that The Colony failed to raise a genuine issue of material fact in response to
the District=s challenge
to The Colony=s claim
seeking a declaration that no contract was formed because the terms of the
agreement are vague and ambiguous and that the trial court did not err by
granting the District=s motion for
summary judgment on this ground.  See Tex.
R. Civ. P. 166a(c).  We overrule this part of The Colony=s second issue.

3.      Illusory and Mutuality of
Obligation

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that no contract was formed because the
promises involved in the Contract were illusory and created no mutuality of
obligation. Both Frisco and the District moved for summary judgment on no
evidence grounds.








A bilateral contract is one
in which there are mutual promises between two parties to the contract, each
being both a promisor and a promisee.  Hutchings
v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 489 (1943).  A bilateral contract must be based upon a
valid consideration, in other words, mutuality of obligation.  Fed. Sign v. Tex. S. Univ., 951 S.W.2d
401, 409 (Tex. 1997).  Consideration may
consist of either benefits or detriments to the contracting partiesCit may consist of some right, interest, profit, or benefit that accrues
to one party, or alternatively, of some forbearance, loss, or responsibility
that is undertaken or incurred by the other party.  In re C&H News Co., 133 S.W.3d
642, 647 (Tex. App.CCorpus
Christi 2003, orig. proceeding).  The
existence of a written contract presumes consideration for its execution.  Doncaster v. Hernaiz, 161 S.W.3d 594,
603 (Tex. App.CSan Antonio
2005, no pet.).

A contract that lacks
mutuality of obligation is illusory and void and thus unenforceable.  Tex. S. Univ. v. State Street Bank &
Trust Co., 212 S.W.3d 893, 914 (Tex. App.CHouston [1st Dist.] 2007, pet. denied).  An illusory promise of performance
invalidates a bilateral contract.  Light
v. Centel Cellular Co. of Tex., 883 S.W.2d 642, 645 (Tex. 1994).  A promise is illusory when it fails to bind
the promisor who retains the option of discontinuing performance.  Id.; D.R. Horton, Inc. v. Brooks,
207 S.W.3d 862, 867 (Tex. App.CHouston [14th Dist.] 2006, no pet.).

a.      Frisco

The Colony argues that its
summary judgment evidence establishes that AFrisco did not consider itself to be bound by any of the provisions in
the contract.@  The only argument that The Colony advances to
support this broad contention is that Frisco did not cooperate with The Colony
in allowing access to its pipelines or easements.  Specifically, The Colony is referring to
summary judgment evidence regarding the ongoing, municipal dispute between
itself and Frisco over the land known as the Alightning bolt@ and the Afinger.@








The Colony=s evidence shows that it annexed the disputed land some time in the
1980s, that a portion of the land was in Frisco=s extraterritorial jurisdiction, that Frisco Adidn=t like@ what The Colony had done, and that Frisco wants the land back.  During his deposition, Cheatham discussed an
October 23, 2002 letter addressed to Frisco=s mayor in which The Colony=s mayor indicated that she had received a Aproposed boundary adjustment agreement@ from Purefoy that requested The Colony to relinquish the Alightning bolt,@ the Afinger,@ and
possibly some additional land.  The
following exchange then occurred:

[The
District=s
attorney]:  All right.  And so it=s your understanding that, at
least at this point in time, the proposition proposal by the City of Frisco in
October of 2002 was that you give up this 1499.462 acres, and in exchange the
City of The Colony would be granted access to Frisco=s
sewer lines and easements to get to the Stewart Creek West facility?

 

[Cheatham]:  Based on this, that would appear to be the
case.

Johnston=s deposition testimony reflected Cheatham=s deposition testimony.  He
opined that the annexation dispute served as the basis for Frisco=s Arefusal@ to allow The Colony access to its easements and that Frisco would
have given The Colony access to its existing lines if the Colony had
relinquished its claim to the disputed land.








The Colony also submitted a
few emails between Cheatham and Purefoy in which they discuss the annexation
issue.  Purefoy indicated in one email
that Frisco wanted the Aannexation
issue@ to be resolved before Amoving forward on the sewer line issue.@

None of this evidence
concerning the boundary dispute between Frisco and The Colony raises a genuine
issue of material fact regarding The Colony=s claim that Frisco=s obligations under the Contract were illusory or lacking mutuality of
obligation because the issue of and the circumstances surrounding The Colony=s negotiations with Frisco for pipelines or easement access are distinct
from and beyond the scope of Frisco=s obligations under the Contract.








We look to the Contract
first.  It outlines Frisco=s obligations, which include, but are not limited to, Frisco=s right to discharge wastewater into the System in consideration for
payments to the District, Frisco=s agreement to limit discharge into the System that complies with
quality requirements that the District may establish, and Frisco=s agreement to make payments to the District Afor services to be rendered to each Participant.@  As we have already discussed,
the Contract makes clear that transportation of wastewater to the plant is the
sole responsibility of Frisco and The Colony. 
Other than this, the Contract does not set forth any terms and conditions
regarding The Colony=s or Frisco=s transportation of wastewater to the point of entry.  Consequently, the terms set forth within the
four corners of the Contract impose no wastewater transportation obligations on
Frisco in which Frisco retains the option of performing or not performing those
obligations.  See  Light, 883 S.W.2d at 645. 

The Aset forth within the four corners of the Contract@ language immediately above is significant because The Colony=s argument centers on facts surrounding an issue that is beyond Frisco=s obligations under the Contract. 
According to Lambert, whom Johnston agreed Ahas the most
knowledge and best understanding of the negotiations before and leading up to
and entry into the contract,@ the major victory
for The Colony was the capacity that it acquired in the plant.  There were
discussions in the latter part of the meetings leading up to the execution of
the Contract regarding wastewater transportation, but Lambert described this as
a Asecondary issue.@  The actual negotiations between The Colony
and Frisco regarding wastewater transportation to the point of entry were to be
conducted at some point after the Contract=s execution, and the final agreements concerning the same would be
documented in another written contract. 
Lambert=s testimony
is thus not inconsistent with the terms of the Contract.








As Lambert contemplated, The
Colony and Frisco negotiated the issue of wastewater transportation after the
Contract had been executed, which was also after The Colony had made payments
to the District pursuant to the terms of the Contract.[7]  The summary judgment evidence shows that it
is only at this pointCafter the Contract had been executedCthat the border dispute between The Colony and Frisco over the Alightning bolt@ and the Afinger@ became an
issue in the context of this case.

The summary judgment evidence
thus demonstrates that the circumstances surrounding the post-Contract
wastewater negotiations between The Colony and Frisco are mutually exclusive of
Frisco=s general obligations under the Contract.  Frisco=s obligations under the Contract are not rendered illusory simply
because The Colony and Frisco never reached an agreement on the wastewater
transportation issue.  See id.  And nothing in the Contract addresses or
limits Frisco=s
post-Contract ability to negotiate issues not addressed in the Contract.  At least one individual associated with The
Colony seems to have recognized that the border dispute and the failed
negotiations between The Colony and Frisco concerning the issue of wastewater
transportation are matters beyond the scope of the Contract.  Lambert testified:








[The
District=s
attorney]: But as far as making that final jump from Austin Ranch and Wynnewood
Peninsula across the City of Frisco to the Stewart West plant, you didn=t
start those negotiations before you left, correct?

 

[Lambert]:
To my eternal shame, no, I did not start those negotiations before I left.

 

We hold that The Colony
failed to raise a genuine issue of material fact in response to Frisco=s challenge to The Colony=s claim seeking a declaration that no contract was formed because the
promises involved in the Contract were illusory and created no mutuality of
obligation and that the trial court did not err by granting Frisco=s motion for summary judgment on this ground.  See Tex. R. Civ. P. 166a(i).  We overrule this part of The Colony=s first issue.

b.      The District








As for the District, The
Colony=s specific argument seems to be that the District was not bound
by its obligation to treat The Colony=s wastewater because the District did not have the capacity to accept
The Colony=s
wastewater.  According to The Colony, ANo benefit is gained by Plaintiff transporting its wastewater to a
plant that does not have capacity to treat it.@ The Colony directs us to summary judgment evidence that it contends
shows that the District did not have the capacity to treat its wastewater.  Assuming without deciding that this evidence
shows that the District did not have the capacity to treat its wastewater, it
nonetheless does not raise a genuine issue of material fact in support of The
Colony=s illusory or mutuality of obligation claim because it is evidence of
a possible breach of contract, not of an illusory obligation.

The Contract sets forth the
District=s obligations, including that the District will issue bonds to provide
for the System; that the District will use its best efforts to design, acquire,
construct, and complete the System; and that the District will operate and
maintain the System to provide service to The Colony and Frisco.  Cheatham agreed at his deposition that to the
best of his knowledge, the District has been willing to provide wastewater
treatment for The Colony and that this in turn provided value to The
Colony.  Lambert testified to the same,
opining that the signing of the Contract gave The Colony value, i.e., capacity
in the plant.








The Contract thus bound the
District to provide capacity to The Colony for wastewater treatment in exchange
for payments.  This obligation is not
illusory because the District may not choose to disavow or ignore it at its
option.  See Brooks, 207 S.W.3d at
867.  Nor are the District=s capacity and treatment obligations illusory if the District fails to
abide by those obligations.  That is a
set of circumstances more appropriately addressed in a breach of contract
context because it concerns an alleged failure by the District to abide by the
terms of the Contract.  We hold that The
Colony failed to raise a genuine issue of material fact in response to the
District=s challenge to The Colony=s claim seeking a declaration that no contract was formed because the
promises involved in the Contract were illusory and created no mutuality of
obligation and that the trial court did not err by granting the District=s motion for summary judgment on this ground.  See Tex. R. Civ. P. 166a(i).  We overrule this part of The Colony=s second issue.   

4.      State Law Violation

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that the Contract violates the
government code. Both Frisco and the District moved for summary judgment on no
evidence grounds.

Chapter 791 of the government
code covers interlocal cooperation contracts. 
Tex. Gov=t Code Ann. '' 791.001B.033 (Vernon
2004 & Supp. 2008).  The purpose of
the chapter is to increase the efficiency and effectiveness of local
governments by authorizing them to contract with one another and with agencies
of the state.  Id. ' 791.001.  The chapter
expressly allows for contracts between a municipality and a district or river
authority for wastewater treatment facilities. 
Id. ' 791.026(a)(1).









The Colony alleged in its
third amended original petition that the Contract is null and void for failure
to comply with government code sections 791.011(d)(2) and 791.011(e).  Section 791.011(d)(2) provides that an interlocal
contract must Astate the
purpose, terms, rights, and duties of the contracting parties.@  Id. ' 791.011(d)(2).  Section
791.011(e) provides that A[a]n
interlocal contractual payment must be in an amount that fairly compensates the
performing party for the services or functions performed under the Contract.@  Id. ' 791.011(e).

The Colony=s sole argument under section 791.011(d)(2) is that it Aintroduced summary judgment evidence to raise a genuine fact issue
regarding meeting of the minds@ and that A[i]f there
is an outstanding fact issue about meeting of the minds, it follows that there
must also be a genuine factual dispute as to whether the agreement sufficiently
stated the rights and duties of the contracting parties.@  We determined above that The
Colony failed to raise a genuine issue of material fact on its meeting of the
minds claim.  Because The Colony failed
to raise a genuine issue of material fact on that claim, its government code
section 791.011(d)(2) claim must fail as well. 
The Colony does not rely on any additional evidence or submit any other
argument in its brief challenging the trial court=s grant of summary judgment in favor of the District on this ground.








As for The Colony=s section 791.011(e) claim, it contends that a genuine issue of
material fact issue exists regarding fair compensation because it made payments
under the Contract but never had any of its wastewater treated by the District.  It directs us to summary judgment evidence
showing that it made contractual payments to the District and that Freese and
Nichols performed a survey in furtherance of a routing plan.








It has long been recognized
that when
statutory language is clear and unambiguous, a statute should be given its
plain meaning.  Employers Cas. Co. v.
Dyess, 957 S.W.2d 884, 889 (Tex. App.CAmarillo 1997,
writ denied).  Section 791.011(e)=s purpose is apparent.  It requires
that payments under an interlocal contract fairly compensate the performing
party.  Id.  In this case, section 5.03 of the Contract, APayments by City,@ provides, AFor services
to be rendered to each Participant by the District under this Contract
. . ., each Participant has agreed to pay . . . its
proportionate share of the Annual Requirement . . . .@  As applied, section 791.011(e)
requires that The Colony=s and Frisco=s payments to the District be in an amount that fairly compensates the
District for the services it performs under the Contract.  The Colony=s argument relying on section 791.011(e) is thus misplaced because The
Colony is the party that made the payments under the Contract to the District;
the District did not make payments to The Colony.  The plain language of section 791.011(e) does
not support The Colony=s argument,
nor does The Colony provide any support for its interpretation of the statute
requiring that the services provided by the payee (the District) be fair to the
payor (The Colony).  The Colony does not
rely on any additional evidence or submit any other argument in its brief
challenging the trial court=s grant of summary judgment in favor of the District on this ground.

We hold that The Colony
failed to raise a genuine issue of material fact in response to both Frisco=s and the District=s challenges to The Colony=s claim seeking a declaration that the Contract violates the
government code and that the trial court did not err by granting Frisco=s and the District=s motions for summary judgment on this ground.  See Tex. R. Civ. P. 166a(i).  Accordingly, we overrule this part of The
Colony=s first and second issues.

5.      Violation of Public
Policy

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that the Contract was never formed because
it violates public policy.  The District
sought a summary judgment on this claim on traditional grounds only.








Parties have the right to
contract as they see fit as long as their agreement does not violate the law or
public policy.  In re Prudential Ins.
Co. of Am., 148 S.W.3d 124, 129 (Tex. 2004) (orig. proceeding).  Public policy can be a vague and uncertain
term, and it is up to the power of the lawmaking body to define.  Tex. Commerce Bank, N.A., v. Grizzle,
96 S.W.3d 240, 250 (Tex. 2002).  Texas=s public policy is thus embodied in its constitution, statutes, and
judicial decisions.  Id.; Classic
Century, Inc. v. Deer Creek Estates, Inc., No. 02-06-00104-CV, 2008 WL
3540194, at *5 (Tex. App.CFort Worth
Aug. 14, 2008, no pet. h.) (mem. op.). 
The appropriate test when considering whether a contract violates public
policy Ais whether the tendency of the agreement is injurious to the public
good, not whether its application in a particular case results in actual
injury.@  Jankowiak v. Allstate Prop.
& Cas. Ins. Co., 201 S.W.3d 200, 210 (Tex. App.CHouston [14th Dist.] 2006, no pet.). 
Without clear legislative intent to prohibit agreements, and absent any
claim of fraud, duress, accident, mistake, or failure or inadequacy of
consideration, Texas courts generally decline to declare contractual agreements
void on public policy grounds.  Fairfield
Ins. Co. v. Stephens Martin Paving, LP, 246 S.W.3d 653, 664 (Tex. 2008).

a.      Frisco








The Colony argues that it was
ordered in 2002 or 2003 by the Texas Commission on Environmental Quality (ATCEQ@) to bring
its wastewater treatment facilities into compliance with effluent and capacity
regulations, that AFrisco=s conduct resulted in The Colony having to pay millions of taxpayer
dollars to expand and improve its aging treatment plant to the detriment of the
general public,@ and,
therefore, that the Contract Aviolate[s] public policy governing the careful spending of public
resources.@  The Colony submitted summary judgment
evidence regarding the TCEQ orders to revise its wastewater treatment
facilities, the general details behind The Colony=s decision to become involved with the District, and, among other
things, the circumstances surrounding The Colony=s decision to begin the process of preparing for transportation of its
wastewater to the plant.  The Colony=s evidence does not raise a genuine issue of material fact that the
Contract is void for violating public policy.








The Contract sets forth a
scheme by which The Colony and Frisco pay the District to accept and treat
their wastewater.  As addressed in the preceding
section, the government code expressly allows for this particular type of
contract.  See Tex. Gov=t Code Ann. ' 791.026(a)(1)
(AA municipality, district, or river authority of this state may
contract with another municipality, district, or river authority of this state
to obtain or provide part or all of@ Awater supply
or wastewater treatment facilities.@).  Contrary to The Colony=s argument, the government code reflects a public policy that permits
the execution of this particular type of agreement.  That The Colony ultimately spent between $12
and $13 million to upgrade its own treatment plant does not render the Contract
violative of public policy.  We hold that
The Colony failed to raise a genuine issue of material fact in response to
Frisco=s challenge to The Colony=s claim seeking a declaration that the Contract was never formed
because it violates public policy and that the trial court did not err by granting
Frisco=s motion for summary judgment on this ground.  See Tex. R. Civ. P. 166a(i).  Accordingly, we overrule this part of The
Colony=s first issue.

b.      The District

The District submitted the
Contract into evidence and met its summary judgment burden.  The Colony does not rely on any additional
evidence or submit any other argument in its brief challenging the trial court=s grant of summary judgment in favor of the District on this
ground.  We hold that The Colony failed
to raise a genuine issue of material fact in response to the District=s challenge to The Colony=s claim seeking a declaration that the Contract was never formed
because it violates public policy and that the trial court did not err by
granting the District=s motion for
summary judgment on this ground.  See Tex.
R. Civ. P. 166a(c).  Accordingly, we overrule this part of The
Colony=s second issue.

C.     DeclarationCUnjust Enrichment

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that Ait is entitled to the quasi-contractual remedy of unjust enrichment.@  Both Frisco and the
District moved for summary judgment on no evidence grounds.








Unjust enrichment is an
equitable principle holding that one who receives benefits unjustly should make
restitution for those benefits.  Villarreal
v. Grant Geophysical, Inc., 136 S.W.3d 265, 270 (Tex. App.CSan Antonio 2004, pet. denied). 
Unjust enrichment occurs when the person sought to be charged has
wrongfully secured a benefit or has passively received one which it would be
unconscionable to retain.  Id.  Thus, a party may recover under the theory of
unjust enrichment when one person has obtained a benefit from another by fraud,
duress, or the other taking of an undue advantage.  Heldenfeld Bros., Inc. v. City of Corpus
Christi, 832 S.W.2d 39, 41 (Tex. 1992).








Generally speaking, however,
when a valid, express contract covers the subject matter of the parties= dispute, there can be no recovery under a quasi-contract theory, such
as unjust enrichment.  Fortune Prod.
Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000); DeClaire v. G&B
Mcintosh Family Ltd. P=ship, 260 S.W.3d 34, 49 (Tex.
App.CHouston [1st Dist.] 2008, no pet. h.). 
This is because parties should be bound by their express agreements, and
when a valid agreement already addresses the matter, recovery under an
equitable theory is generally inconsistent with the express terms of the
agreement.  Conoco, 52 S.W.3d at
684; see also Edwards v. Mid-Continent Office Distribs., L.P., 252
S.W.3d 833, 837 (Tex. App.CDallas 2008, pet. denied) (AThe doctrine of unjust enrichment applies the principles of
restitution to disputes that are not governed by a contract between the
parties.@).  An exception to this rule is
when overpayment was made under a valid contract.  Sw. Elec. Power Co. v. Burlington N. R.R.
Co., 966 S.W.2d 467, 469B70 (Tex. 1998).

Here, The Colony directs us
to summary judgment evidence that Johnston, Cheatham, and Dillard thought that
the outcome of the Contract was Aexceedingly unfair to The Colony@ because AThe Colony
never had a single drop of wastewater treated.@  Notwithstanding this evidence,
the remedy of unjust enrichment is not available to The Colony because there is
a valid, express contract governing the dispute, and recovery under this
equitable doctrine would be inconsistent with the express terms of the Contract.
 See Fortune Prod. Co., 52 S.W.3d
at 684.  The Colony does not argueCnor does the summary judgment evidence demonstrateCthat it overpaid under the Contract, only that it never had any of its
wastewater treated despite making payments under the Contract.  We hold that The Colony failed to raise a
genuine issue of material fact in response to both Frisco=s and the District=s challenges to The Colony=s request for a declaration that it is entitled to the remedy of
unjust enrichment and that the trial court did not err by granting Frisco=s and the District=s motions for summary judgment on this ground.  See Tex. R. Civ. P. 166a(i).  Accordingly, we overrule this part of The
Colony=s first and second issues.








D.     DeclarationCEquitable Remedy of Rescission

The Colony alternatively
sought a declaration that it is entitled to rescind the Contract because of a
failure of consideration, a mutual mistake of fact, a unilateral mistake of
fact, repudiation of the Contract by Frisco and the District, or the unjust
enrichment of Frisco or the District.

Rescission is an equitable
remedy that seeks to set aside an otherwise legal contract due to fraud,
mistake, or for some other reason when it is necessary to avoid unjust
enrichment of the non complaining party to the contract, so that the parties
thereto may be restored, insofar as is possible, to the status or position they
were in prior to execution of the contract. 
Isaacs v. Bishop, 249 S.W.3d 100, 109 (Tex. App.CTexarkana 2008, pet. denied); Martin v. Cadle Co., 133 S.W.3d
897, 903 (Tex. App.CDallas 2004,
pet. denied); Barker v. Roelke, 105 S.W.3d 75, 84 (Tex. App.CEastland 2003, pet. denied). 
Rescission is thus an Aundoing@ of the
contract and generally used as a substitute for monetary damages when such
damages would not be adequate.  Isaacs,
249 S.W.3d at 109; Am. Apparel Prods., Inc. v. Brabs, Inc., 880 S.W.2d
267, 270 (Tex. App.CHouston
[14th Dist] 1994, no writ).

1.      Frisco=s Ratification Affirmative Defense








Before addressing The Colony=s issues complaining of the trial court=s grant of summary judgment in favor of Frisco and the District on The
Colony=s rescission theories, we must first determine whether the trial court
properly granted Frisco summary judgment on its ratification affirmative
defense.  If the trial court properly
granted Frisco summary judgement on its ratification affirmative defense, we
need not consider whether the trial court properly granted Frisco summary
judgment on each of The Colony=s rescission theories because The Colony=s ratification of the Contract would have precluded it from
subsequently avoiding the Contract under the equitable remedy of
rescission.  See Isaacs, 249
S.W.3d at 110 n.9 (stating that once a party ratifies a contract, it may not
later withdraw its ratification and seek to avoid the contract); Barker,
105 S.W.3d at 84 (same).








Ratification is the adoption
or confirmation, by one with knowledge of all material facts, of a prior act which
did not then legally bind that person and which that person had the
right to repudiate.  EOG Res.,
Inc. v. Wall, 160 S.W.3d 130, 138 (Tex. App.CTyler 2005, no pet.); Vessels v. Anschutz Corp., 823 S.W.2d
762, 764 (Tex. App.CTexarkana
1992, writ denied); see also Miller v. Kennedy & Minshew, Prof=l. Corp., 142 S.W.3d 325, 342 (Tex.
App.CFort Worth 2003, pet. denied) (stating that a person ratifies an unauthorized
act if, by word or conduct, with knowledge of all material facts, he confirms
or recognizes the act as valid).  In
other words, if a party by its conduct recognizes a contract as valid, having
knowledge of all relevant facts, it ratifies the contract.  Barrand, Inc. v. Whataburger, Inc.,
214 S.W.3d 122, 146 (Tex. App.CCorpus Christi 2006, pet. denied); Barker, 105 S.W.3d at
84.  Whether a party has ratified a
contract may be determined as a matter of law if the evidence is not
controverted or is incontrovertible.  Barrand,
Inc., 214 S.W.3d at 146.

We determined above that the
trial court did not err by granting Frisco summary judgment on The Colony=s claim seeking a declaration that no contract was formed.  The enforceable Contract legally bound the
parties to perform their respective obligations set forth therein.  Consequently, there is no evidence that The
Colony ratified an agreement that it was not legally bound to comply with and
that it had a right to repudiate.  See
Wall, 160 S.W.3d at 138; Vessels, 823 S.W.2d at 764.  Frisco argues that The Colony ratified the
Contract by making contractual payments, but The Colony=s summary judgment evidence shows that it discontinued contractual
payments around the time that it learned of issues relating to the alleged lack
of plant capacity.








We hold that Frisco did not
prove its ratification defense as a matter of law and that the trial court
erred by granting Frisco summary judgment on this affirmative defense.  See Hood, 924 S.W.2d at 121 (requiring
movant to present summary judgment evidence that establishes each element of
its affirmative defense as a matter of law). 
Because Frisco was not entitled to summary judgment on its ratification
affirmative defense as a matter of law, we will consider whether the trial
court erred by granting Frisco summary judgment on the rescission theories
pleaded by The Colony.  See Isaacs,
249 S.W.3d at 110 n.9.[8]

2.      Failure of Consideration

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that it is entitled to rescind the
Contract due to a failure of consideration. 
Both Frisco and the District moved for summary judgment on no evidence
grounds.








Above, we discussed that Alack of consideration@ refers to a contract that lacks mutuality of obligation.  Fed. Sign, 951 S.W.2d at 409.  Failure of consideration, however, occurs
when, due to a supervening cause after an agreement is reached, the promised
performance fails.  U.S. Bank, N.A. v.
Prestige Ford Garland Ltd. P=ship, 170 S.W.3d 272, 279 (Tex.
App.CDallas 2005, no pet.).  The
distinction between the two is that lack of consideration exists, if at all,
immediately after the execution of the contract while failure of consideration
arises because of subsequent events.  Belew
v. Rector, 202 S.W.3d 849, 854 n.4 (Tex. App.CEastland 2006, no pet.).  Thus,
failure of consideration may result as a consequence of one party=s failure to perform its obligations under the agreement, resulting in
the other party=s failure to
receive the consideration set forth in the agreement.  U.S. Bank, N.A., 170 S.W.3d at 279.

a.      Frisco

The Colony devotes three
sentences in support of its argument that it raised a genuine issue of material
fact on its failure of consideration issue. 
It states, AIt is
uncontroverted that The Colony never had any wastewater treated at the Plant,@ AIt is
uncontroverted that The Colony entered into the agreement for the purpose of
obtaining wastewater treatment,@ and AIt is
uncontroverted that Frisco refused to allow access to the Plant and [the
District] refused to force the issue.@  Thus, the Asupervening cause@ that The Colony claims caused a post-Contract failure of
consideration is Frisco=s Arefusal@ to give The
Colony access to its easements or pipelines. 
This is no evidence of a failure of consideration.      

Initially, the summary
judgment evidence demonstrates that The Colony and Frisco unsuccessfully
negotiated the wastewater transportation issue before The Colony filed
suit.  Johnston testified as follows:








[Johnston]:  Well, what happened is they requested the
finger and gave the finger, and then they requested the finger and the
lightning bolt, and then they requested the finger, the lightning bolt and it
was like a fan area.  An then at that
point, we didn=t
know where it stood.

 

[The
District=s
attorney]:  So, ultimately, you never
agreed - - the City of The Colony never agreed to give all of that land in
exchange for access, correct?

 

[Johnston]:  We were willing to.  We had been given instructions to give them
that land.

 

[The District=s attorney]:  By whom?

[Johnston]:  By the council.

[The
District=s
attorney]:  But you were still attempting
to negotiate a deal with the City of Frisco whereby you didn=t
have to part with that land to get the access as of June 3, 2004?

 

[Johnston]:  Yes.

[The
District=s
attorney]:  And then you went ahead and
filed suit shortly thereafter on June 8, 2004, correct?

 

[Johnston]:  Yes.

[The District=s attorney]:  Which was five
days later?

[Johnston]:  Five days later.

Thus, The Colony=s statement that Frisco Arefused@ to allow
The Colony access to its pipelines or easements must be considered in light of
the relevant summary judgment evidence.








As our analyses above
demonstrate, the Contract does not set forth any obligations regarding The
Colony=s or Frisco=s
transportation of wastewater to the point of entry.  This was an issue to be addressed after the
Contract was executed and in a separate agreement.  Frisco also does not have an obligation under
the Contract to give The Colony access to its pipelines or easements, nor does
the Contract limit Frisco=s ability to
bargain for something in exchange for giving The Colony access to its pipelines
or easements (in this case the Alightning bolt@ and Afinger@). 

Equity also does not favor
The Colony.  Cheatham testified about his
remarks in an email opining that The Colony did not make adequate preparations
for wastewater transportation in the Contract. 
He testified:

[The
District=s
attorney]: I=m
going to hand you what=s
been marked Deposition Exhibit No. 9. 
Can you identify that document?

 

[Cheatham]:
It is an e-mail from me to the city council dated November 19th, 2002.

 

[The
District=s
attorney]:  And you agree that this is
the e-mail that you sent to city council at that time, a true and correct copy?

 

[Cheatham]:  I - - I believe that to be the case.

[The
District=s
attorney]:  If I could please have you
look at the last paragraph on page 1. 
Read that aloud.

 

[Cheatham]:  As indicated above we have an agreement with
Frisco and North Texas Municipal Water District on the Stewart Creek
plant.  Unfortunately, when we entered
into the agreement, we didn=t make adequate - -

 

THE
REPORTER:  Sir, could you slow down for
me, please, when you=re
reading?








[Cheatham]:  Unfortunately, when we entered into the
agreement, we didn=t
make adequate preparations for getting lines to the plant.  [Emphasis added.]

 

The Colony=s summary judgment evidence does not support its equitable contention
that it should be able to Aundo@ the
Contract because itCnot FriscoCis the party ultimately responsible for not making Aadequate preparations for getting [its] lines to the plant.@

We hold that The Colony
failed to raise a genuine issue of material fact in response to Frisco=s challenge to The Colony=s request for a declaration that it is entitled to rescind the
Contract for failure of consideration and that the trial court did not err by
granting Frisco=s motion for
summary judgment on this ground.  See Tex.
R. Civ. P. 166a(i).  Accordingly, we overrule this part of The
Colony=s first issue.

b.      The District








Turning to the District=s motion for summary judgment, The Colony argues that it raised a
genuine issue of material fact that the District=s consideration failed because the capacity that The Colony had
purchased did not exist when Aenforcement was sought.@  Whether the District
had sufficient capacity at the plant to treat The Colony=s wastewater, however, is an issue that survived summary judgment and
went to trial.  The trial court=s order granting the District=s motion for summary judgment states, AThe Colony=s cause of
action that [the District] breached its obligation to provide wastewater
treatment services to The Colony at the >Point of Entry= to the
District=s System is hereby retained for trial.@  It continues, AThe Court finds this to be the sole genuine issue of material fact
regarding any cause of action pleaded by The Colony against [the District]
which remains to be determined by the jury.@  There was even a jury question
on the capacity issue.  Question number
one of the trial court=s jury
charge asked whether the District materially breached the Contract by, among
other things, Afailing to
have adequate capacity,@ and the
jury answered, AYes.@  Jury question number three
asked what sum of money, if any, would fairly and reasonably compensate The
Colony for its damages that were caused by the District=s failure to comply with the Contract. Although The Colony labels its
argument as a Afailure of
consideration@ instead of
a Abreach of contract,@ its argument is the same:  the
District failed to meet its obligation to provide capacity to The Colony as
required by the Contract.  Because the
trial court did not grant the District summary judgment on this issue, which is
an issue that was ultimately submitted to the jury, it is not appropriate for
us to determine in the summary judgment context whether a genuine issue of
material fact exists thereon.

 

 








3.      Mutual Mistake of Fact

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that it is entitled to rescind the
Contract due to a mutual mistake of fact. 
The District sought summary judgment on this claim on traditional
grounds only.

A mutual mistake of fact
occurs when the parties to an agreement have a common intention, but their
written agreement erroneously reflects that intention due to a mistake by both
parties in writing the agreement.  Newsom
v. Starkey, 541 S.W.2d 468, 472 (Tex. Civ. App.CDallas 1976, writ ref=d n.r.e.).  The elements of mutual
mistake are thus (1) a mistake of fact, (2) held mutually by the parties, and
(3) which materially affects the agreed-upon exchange.  Barker, 105 S.W.3d 75 at 84.  The doctrine of mutual mistake must not
routinely be available to avoid the results of an unhappy bargain.  Williams v. Glash, 789 S.W.2d 261, 265
(Tex. 1990).  Parties should be able to
rely on the finality of freely bargained agreements.  Id.

a.      Frisco








The Colony argues that it
raised a genuine issue of material fact regarding mutual mistake because it
interpreted the Contract to require the District to ensure access to the plant,
but the other parties Aappeared to
have a different understanding of the [C]ontract.@  The Colony directs us to
Johnston=s deposition testimony in which he explained that he thought the
District was supposed to work with The Colony in Asend[ing] the lines@ to the plant; to Cheatham=s deposition testimony in which he opined that the District did not
comply with the portion of the Contract requiring the District to use its best
efforts to acquire, construct, and complete the System; and to Dillard=s deposition testimony in which he opined that the District had an
obligation under the Contract to obtain easements and construct pipelines.

Although The Colony submitted
evidence demonstrating its own thoughts about the parties= various responsibilities under the Contract, it has offered no
evidence that Frisco likewise suffered from a mistake of fact regarding any of
those responsibilities.  The Colony thus
produced no evidence to support the mutual mistake element requiring that both
parties be mistaken about a common intention.  See Barker, 105 S.W.3d at 84.  

Moreover, an error in
predicting a future fact known to be uncertain is not the kind of mistake that
will relieve a party from a contract.  Id.  The Colony left the issue of wastewater
transportation to be decided at some point after the parties executed the
Contract, but it did not anticipate having to negotiate the Alightning bolt@ and Afinger@ with Frisco
for pipeline or easement access. According to Johnston, AThe Colony management did not see that coming.@ Equity does not favor The Colony for its lack of foresight.








We hold that The Colony
failed to raise a genuine issue of material fact in response to Frisco=s challenge to The Colony=s request for a declaration that it is entitled to rescind the
Contract because of a mutual mistake of fact and that the trial court did not
err by granting Frisco=s motion for
summary judgment on this ground.  See Tex.
R. Civ. P. 166a(i).  Accordingly, we overrule this part of The
Colony=s first issue.

b.      The District








The District submitted Parks=s affidavit in addition to the Contract (which provides that The
Colony is responsible for transporting its wastewater to the point of
entry).  According to Parks, the District
Adid not enter into an agreement with The Colony to construct its
wastewater transmission lines.@ Moreover, A[n]o
District funds were available for the construction of [T]he Colony=s wastewater transportation lines because the Contract expressly
placed the obligation for transporting The Colony=s wastewater upon The Colony.@  The Colony relies on the same
evidence and argument as it does in the portion of its brief addressing Frisco=s motion for summary judgment on this ground. We therefore reach the
same conclusion regarding the District=s motion for summary judgment on this groundCThe Colony produced no evidence to support the mutual mistake element
requiring that both parties be mistaken about a common intention.  See Barker, 105 S.W.3d at 84.  We hold that The Colony failed to raise a
genuine issue of material fact in response to the District=s challenge to The Colony=s request for a declaration that it is entitled to rescind the
Contract because of a mutual mistake of fact and that the trial court did not
err by granting the District=s motion for summary judgment on this ground.  See Tex. R. Civ. P. 166a(c).  Accordingly, we overrule this part of The
Colony=s second issue.   

4.      Unilateral Mistake of
Fact

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that it is entitled to rescind the
Contract due to a unilateral mistake of fact. 
The District sought summary judgment on this claim on traditional
grounds only.     








A plaintiff must show the
following in order to be entitled to equitable relief on the grounds of
unilateral mistake: (1) the mistake is of so great a consequence that to
enforce the contract as made would be unconscionable; (2) the mistake relates
to a material feature of the contract; (3) the mistake must have been made
regardless of the exercise of ordinary care; and (4) the parties can be placed
in status quo in the equity sense; i.e., rescission must not result in
prejudice to the other party except for the loss of his bargain.  James T. Taylor & Son, Inc. v. Arlington
ISD, 160 Tex. 617, 335 S.W.2d 371, 373 (1960); N. Natural Gas Co. v.
Chisos Joint Venture I, 142 S.W.3d 447, 456 (Tex. App.CEl Paso 2004, no pet.).








The Colony argues that it
raised a fact issue as to whether Frisco=s conduct was unconscionable and that the evidence was undisputed that
The Colony paid over $12 million to upgrade its own treatment plant.  Although it directs us to Johnston=s testimony in which he opines that the expenditure of $878,000 under
the Contract was not a Agood
expenditure@ and to
Cheatham=s testimony in which he discusses amounts paid by The Colony under the
Contract, The Colony=s
expenditure of between $12 and $13 million to modify its plant, and other
miscellaneous issues, The Colony does not set forth any argument or discussion
regarding any evidence of how the mistake was made despite the exercise of
ordinary care or whether the parties can be placed in the status quo from an
equitable standpoint (prejudice).  See
James T. Taylor & Son, Inc., 335 S.W.2d at 373.  Because The Colony failed to raise a genuine
issue of material fact in support of two essential elements of its unilateral
mistake theory, we hold that The Colony failed to raise a genuine issue of
material fact in response to Frisco=s challenge to The Colony=s request for a declaration that it is entitled to rescind the
Contract because of a unilateral mistake of fact and that the trial court did
not err by granting Frisco=s motion for summary judgment on this ground.  See Tex. R. Civ. P. 166a(i).  Accordingly, we overrule this part of The
Colony=s first issue.

The District challenged the
unilateral mistake element requiring that rescission not result in prejudice to
the other party except for the loss of his or its bargain.  Johnston testified that The Colony wants the
return of the approximately $878,000 that it paid to the District even though
he admitted that the District had utilized all money paid to it to maintain the
plant. According to Parks, however, because the plant was expanded for use by
The Colony and Frisco, the sole source of funds to repay the bond debt and to
pay for the operation and maintenance of the System comes from funds generated
under the Contract from The Colony and Frisco. 
Thus, the District Acannot utilize funds from other projects to fund construction or
operating costs@ of the
plant and, consequently, would notCin the equity senseCbe returned to the status quo if the Contract is rescinded.








The District having met its
summary judgment burden under the challenged element of prejudice resulting from
rescission, The Colony relies on the same evidence and argument as it does in
the portion of its brief addressing Frisco=s motion for summary judgment on the ground of unilateral
mistake.  The Colony thus does not set
forth any argument or discussion regarding any evidence that rescission would
not result in prejudice to the District. 
See James T. Taylor & Son, Inc., 335 S.W.2d at 373.  We hold that The Colony failed to raise a
genuine issue of material fact in response to the District=s challenge to The Colony=s request for a declaration that it is entitled to rescind the
Contract because of a unilateral mistake of fact and that the trial court did
not err by granting the District=s motion for summary judgment on this ground.  See Tex. R. Civ. P. 166a(c).  Accordingly, we overrule this part of The
Colony=s second issue.

5.      Repudiation

Frisco and the District moved
for summary judgment on The Colony=s claim seeking a declaration that it is entitled to rescind the
Contract because Frisco and the District repudiatedCor expressed an intent not to perform their respective obligations
underCthe Contract.  Both Frisco and
the District moved for summary judgment on no evidence grounds.








Repudiation consists of words
or actions by a contracting party that indicate he is not going to perform his
contract in the future.  Jenkins v.
Jenkins, 991 S.W.2d 440, 447 (Tex. App.CFort Worth 1999, pet. denied); Group Life & Health Ins. Co. v.
Turner, 620 S.W.2d 670, 673 (Tex. Civ. App.CDallas 1981, no writ).  It
is conduct that shows a fixed intention to abandon, renounce, and refuse to
perform the contract.  Jenkins,
991 S.W.2d at 447.  In order for a
statement to be deemed repudiation, Aa party=s language
must be sufficiently positive to be reasonably interpreted to mean that the
party will not or cannot perform.@  El Paso Natural Gas Co. v.
Lea Partners, L.P., No. 08-01-00310-CV, 2003 WL 21940729, at *5 (Tex. App.CEl Paso Aug. 14, 2003, pet. denied) (mem. op.) (citing Restatement (Second)
of Contracts ' 250
cmt. b (1979)).








The Colony argues only that
it raised a genuine issue of material fact that Frisco repudiated the Contract
because AFrisco simply would not allow [The Colony] access to the Plant without
[The Colony=s] entering
into a disannexation and boundary adjustment agreement.@  Frisco=s desire to negotiate for The Colony=s disannexation of the real property known as the Alightning bolt@ and the Afinger,@ however,
does not raise a genuine issue of material fact that Frisco demonstrated by
words or actions either an intent not to perform or an inability to perform its
obligations under the Contract.  We have
reviewed all of The Colony=s summary judgment evidence in response to Frisco=s motion for summary judgment. 
None of it raises a genuine issue of material fact that Frisco showed a
fixed intention to abandon, renounce, and refuse to perform any of its
obligations under the Contract.  See
Jenkins, 991 S.W.2d at 447.  We hold
that The Colony failed to raise a genuine issue of material fact in response to
Frisco=s challenge to The Colony=s request for a declaration that it is entitled to rescind the
Contract because of Frisco=s repudiation of the Contract and that the trial court did not err by
granting Frisco=s motion for
summary judgment on this ground.  See Tex.
R. Civ. P. 166a(i).  Accordingly, we overrule this part of The
Colony=s first issue.

In terms of the District, The
Colony relies on the same evidence and argument as it does in the portion of
its brief addressing Frisco=s motion for summary judgment on this ground.  We hold that The Colony failed to raise a
genuine issue of material fact in response to the District=s challenge to The Colony=s request for a declaration that it is entitled to rescind the
Contract because of the District=s repudiation of the Contract and that the trial court did not err by
granting the District=s motion for
summary judgment on this ground.  See
id.  Accordingly, we overrule this
part of The Colony=s second
issue.








In addition to The Colony=s claim seeking a
declaration that it is entitled to rescind the Contract because of Frisco=s and the District=s alleged
repudiation of the Contract, The Colony alleged in its third amended original
petition that it was seeking Aa declaration that
its liability to the Defendants under the contract, if any, has been released
and extinguished by the Defendants= failure to
perform.@  To the extent that there is any distinction
between this repudiation claim and the repudiation claim that we analyzed in
the context of rescission immediately above, and to the extent The Colony seeks
to appeal the trial court=s grant of summary judgment on this claim,
The Colony waived any complaint regarding this rescission claim because it
failed to set forth any argument or analysis of this matter in its brief.  See Tex. R. App. P. 38.1(h).

6.       Unjust Enrichment

In addition to the unjust enrichment claim addressed above,
The Colony alleged that it was entitled to rescind the Contract in order to
avoid the unjust enrichment of Frisco or the District.  Frisco and the District successfully moved
for summary judgment on this ground.








With the exception that The Colony made this unjust
enrichment claim in the context of its rescission allegations, we decipher no
distinction between this unjust enrichment claim and The Colony=s other unjust
enrichment claim analyzed above.  Nor
does The Colony argue that there is a difference between the two.  Applying the unjust enrichment principles
articulated above, we hold that The Colony
failed to raise a genuine issue of material fact in response to Frisco=s and the District=s challenges to The Colony=s request for a declaration that it its entitled to rescind the
Contract due to the unjust enrichment of Frisco or the District and that the
trial court did not err by granting Frisco=s and the District=s motions for summary judgment on this ground.  Accordingly, we overrule this part of The
Colony=s first and second issues. 
The trial court did not err by granting Frisco and the District summary
judgment on The Colony=s claims
seeking a declaration that it is entitled to rescind the Contract.[9]

E.       Promissory Estoppel

Frisco and the District successfully moved for summary
judgment on The Colony=s claim that it is Aentitled to relief
pursuant to a cause of action for promissory estoppel against Defendants.@  The Colony sets forth zero argument or
evidence in its brief challenging the trial court=s grant of summary
judgment in favor of Frisco and the District on this ground.  Thus, to the extent The Colony intends to
challenge this portion of the trial court=s orders granting
Frisco and the District summary judgment on this ground, its complaint is
waived.  See Tex. R. App. P.
38.1(h).  We overrule this part of The
Colony=s first and second
issues.          

F.       Breach of Contract








The essential elements of a breach of contract claim are
the existence of a valid contract, performance or tendered performance by the
plaintiff, breach of the contract by the defendant, and damages sustained as a
result of the breach.  See Valero
Mktg. & Supply Co. v. Kalama Int=l, 51 S.W.3d 345,
351 (Tex. App.CHouston [1st Dist.] 2001, no pet.).  The normal measure of damages in a breach of
contract case is the benefit of the bargain, the purpose of which is to restore
the injured party to the economic position it would have been in had the
contract been performed.  Mays v.
Pierce, 203 S.W.3d 564, 577 (Tex. App.CHouston [14th
Dist.] 2006, pet. denied).

1.       The Colony=s Claims

The Colony sued both Frisco and the District for breach of
contract.  The trial court granted Frisco=s motion for
summary judgment on The Colony=s breach of
contract claim, and with the exception of AThe Colony=s cause of action
that [the District] breached its obligation to provide wastewater treatment
services to The Colony at the >Point of Entry= to the District=s System,@ the trial court
granted the District=s motion for summary judgment on The
Colony=s breach of
contract claim.

a.       Frisco

The Colony does not set forth any argument or evidence in
its brief challenging the trial court=s grant of summary
judgment in favor of Frisco on The Colony=s breach of
contract claim.  To the extent The Colony
intends to challenge this portion of the trial court=s order granting
Frisco summary judgment on The Colony=s breach of
contract claim, its complaint is waived. 
See Tex. R. App. P. 38.1(h). 
We overrule this part of The Colony=s first issue.








b.       The District

In its no evidence motion for summary judgment challenging
The Colony=s breach of contract claim, the District
specifically challenged the element requiring The Colony to prove that the
District breached the Contract.  The
Colony argues that its summary judgment evidence raised a genuine issue of
material fact that the District breached the Contract in the following two
ways:  (1) the District breached the
Contract for failing to use its best efforts to design, acquire, and construct
the System and (2) the District breached the Contract for failure to use its
best efforts to implement the Ared book.@  The Colony=s argument is
centered on section 2.01 of the Contract, which states, AIn order to
provide services for receiving, transporting, treating, and disposing of
Wastewater for Participants, the District will use its best efforts to design,
acquire, construct, and complete the System, as generally described in the [>red book=] . . .
.@








The Colony submitted Dillard=s deposition
testimony in which he opined that the District failed to comply with section
2.01 of the Contract because there are no pipelines or right-of-ways for The
Colony to transport its wastewater to the plant.  Dillard opined that the Contract required the
District to design, acquire, and construct the means for transporting The
Colony=s wastewater to
the plant and that The Colony was responsible only for delivering its effluent.

Cheatham opined in his deposition testimony that the District had not complied with the Abest efforts@ language
because the pipelines set forth in the Ared book@ had not
been constructed.  He reasoned in part as
follows:

[The
District=s
attorney]:  So specifically, if you can
tell, what did, in your opinion, the North Texas Municipal Water District not
do regarding acquire, construct and complete the system as generally described
in the engineering report?

 

[Cheatham]:  Well, to the best of my knowledge, line C,
line D, line B have not been constructed and installed. . . .

 

[The
District=s attorney]:  So by not constructing or installing line B,
C and D, that=s the
basis for your opinion that North Texas Municipal Water District has not done
the acquiring, constructing and completing the system as generally described in
the engineering report?

 

[Cheatham]:  The basis of my opinion is that they have not
completed the requirements based on the fact that these lines have not been
installed.

 

Johnston testified that he
thought the District breached the Contract because it failed to work with The
Colony in sending pipelines to the plant, it demonstrated a lack of cooperation
with The Colony, and it was incompetent. 
He relied on the Ared book@ for his opinion that the District was supposed to assist The Colony
in setting up the wastewater lines.








The Colony argues that the
District failed to use its best efforts Ato implement the concepts contained in the [>red book=].@  It contends that the District
could have allowed The Colony to construct its own pipelines had the District
acquired title to existing right-of-way and easement facilities, that the
District was Aunwilling to
take action contrary to Frisco=s interests@ because AFrisco sits on [the District=s] Board of Directors and is a large customer,@ and that Lisa McCurley, a specialist in wastewater discharge permits,
concluded that Apermit
capacity applications should have been submitted about five years in advance of
the anticipated tie-in date@ and that the District had consequently failed to employ an adequate
permit strategy because it Ahad not entered the permitting process@ as of October 2006.








Utilizing the same rules on
contract construction detailed above, The Colony did not raise a genuine issue
of material fact that the District breached the Contract for failing to use its
best efforts to design, acquire, and construct 
the System or to implement the Ared book@ because a
fair reading of the entire ContractCnot just parts of it read in isolationCdoes not support any of the contentions relied upon by The Colony to
raise a fact issue.  Specifically, the
Contract defines ASystem@ as Aall of the
District=s facilities acquired, constructed, used, or operated by the District
for receiving, transporting, treating, and disposing of Wastewater of and for
Participants.@  Although it uses the word Atransporting,@ the
remainder of the very same sentence unambiguously clarifies that the definition
Aexclud[es] any facilities . . . required to transport
Wastewater to any Point of Entry of the District=s System.@  This means that any time the term ASystem@ is used in
the Contract, unless otherwise indicated, the term is not meant to
include facilities required to transport wastewater.

The definition of ASystem@ is further
limited in the second full sentence of the definition to those facilities Awhich are acquired, constructed, used, or operated by the District to
provide service to Participants pursuant to this Contract.@  [Emphasis added.]  Consistent with this provision, nowhere does
the Contract require or provide that the District is to operate facilities used
to transport wastewater.








Further limiting the meaning
and scope of the term ASystem@ is section 8.01 of the Contract, which provides that A[t]he System shall initially consist of the Plant.@ [Emphasis added.]  The Contract
provides that the term APlant@ refers to the AStewart
Creek West Plant,@ which Athe District currently operates.@  There is no evidence to
indicate that the term APlant@ has taken on any additional meaning since the execution of the
Contract to include pipelines for wastewater transportation.[10]

As for the Ared book,@ although the
initial portion of the Contract generally states that Athe parties hereto
wish to further implement the [>red book=],@ the Contract goes
on to specifically clarify how the partiesCnotwithstanding
the Ared book@Cintended to treat
the issue of wastewater transportation as part of its Aimplementation@ of the Ared book.@  Section 3.03 expressly provides that it is
the sole responsibility of The Colony and Frisco to transport, or cause to be
transported, its wastewater to the point of entry.  The Contract
does not expressly incorporate the Ared book,@ nor is the Ared book@ attached to
the Contract as an exhibit.[11]








The Colony=s arguments that the District failed to use its best efforts to
design, acquire, and construct the ASystem@ and to
implement the Ared book@ are contrary to long-established rules of contract construction
requiring that we ascertain the true intent of the parties by examining and
considering the entire Contract to give effect to all of the Contract=s provisions, that we presume the parties to the Contract intended
every clause to have some effect, and that a specific provision controls over a
general provision.  See Coker, 650
S.W.2d at 393; Heritage Res., Inc., 939 S.W.2d at 121.  The Colony=s evidence relating to the District=s failure to assist with the acquisition of easements or to construct
or assist with the construction of pipelines is thus based upon an improperly
broadCand ultimately unreasonableCinterpretation, or assumption, of the relevant portions of the
Contract.  For these reasons, its
arguments must fail.

We hold that The Colony
failed to raise a genuine issue of material fact in response to the District=s challenge to The Colony=s breach of contract claim and that the trial court did not err by
granting the District=s motion for
summary judgment on this ground.  See Tex.
R. Civ. P. 166a(i).  Accordingly, we overrule this part of The
Colony=s second issue.

2.      Frisco=s Counterclaim

With the exception of
damages, the trial court granted Frisco=s motion for summary judgment on Frisco=s breach of contract counterclaim. 
The Colony challenges the trial court=s grant of summary judgment in favor of Frisco on the breach of
contract counterclaim.








The Contract is signed by the
District=s President, Board of Directors, Frisco=s mayor, The Colony=s mayor, and three witnesses. 
Section 11.01 of the Contract provides that it Ashall become effective as of the date of execution hereof.@  The Contract is dated May 28,
1998.  Section 11.02 provides that the
Contract Ashall
continue in force from the effective date hereof at least until all bonds
. . . shall have been paid in full; and shall also remain in force
thereafter throughout the useful life of the System.@








The Contract is clear on the
parties= respective obligations.  It
provides that A[i]n
consideration of the payments to be made under its respective contract with the
District,@ The Colony
and Frisco shall have the right to discharge wastewater into the System.  Regarding financing, the Contract provides
that the District will issue bonds to provide for the system.  Section 5.03 of the Contract states that A[f]or services to be rendered to each Participant by the District
under this Contract . . ., each Participant has agreed to pay, at the
time and in the manner hereinafter provided, its proportionate share of the
Annual Requirement . . . .@  Section 5.02 provides that the
Annual Requirement shall not be less than an amount sufficient to pay the AOperation and Maintenance Component@ and the ABond Service
Component,@ which
includes in part the redemption premium, if any, and interest on, the bonds
issued to fund the expansion of the plant. 
Section 5.03(h) provides that The Colony and Frisco are Aobligated unconditionally@ to make the ABond Service
Component@ payment Aregardless of whether or not the District actually provides such
facilities and services, or whether or not any Participant actually receives or
uses such facilities and services . . . .@  Payments made by The Colony
and Frisco to the District are the Aonly source available to the
District to provide the Annual Requirement.@ [Emphasis added.]  Sections
5.03(d) and 5.03(d)(v) provide that A[e]ach Participant=s Annual Payment also shall be adjusted and redetermined for the
balance of any applicable Fiscal Year, consistent with the provisions of this
contract, . . . at any time during any Fiscal Year if@ A[i]t appears
to the District that for any other reason it will not receive the full amount
of the Annual Requirement unless such adjustment or redetermination are made.@

Johnston agreed it was The
Colony=s understanding that the District was going to issue bonds to finance
the construction of the plant.  He also
agreed that it was The Colony=s understanding that it was The Colony=s and Frisco=s obligation
to repay the principal and interest on the bonds and the maintenance and
operation of the facility.  Johnston
additionally testified about the percentages of capacity that were allocated to
The Colony at the plant between 1999 and 2003B2004.  He agreed that The Colony
understood that it would still have to pay its percentage share if it did not
access the plant.








The Colony eventually quit
making payments to the District even though its payments under the Contract are
Aunconditional.@  Parks opined that The Colony had breached the
Contract because it failed to continue making payments and that The Colony owes
money for its share of the payments required under the Contract.  Under the tri-party Contract, The Colony and
Frisco are the only two participants. 
The Colony=s and Frisco=s payments are thus the only source of money available to pay the bond
debt and the operation and maintenance of the plant.  If a participating city failed to make a
payment under the Contract, in this case The Colony, then the other
participant, in this case Frisco, had to make up the difference.  With the exception of damages, we hold that
Frisco met its initial summary judgment burden to show that The Colony
materially breached the Contract.  See
Kalama
Int=l, 51 S.W.3d 345, 351 (setting forth
elements of breach of contract claim).








The Colony argues that the
trial court erred by granting Frisco=s motion for summary judgment on its counterclaim for the following
reason:  AThe Colony submitted extensive summary judgment evidence that raised
factual disputes regarding the parties= respective obligations and rights. 
Because the facts were disputed, the trial court erroneously granted
summary judgment . . . .@  It goes on to state a number
of breach of contract rules and that its mayor and assistant city manager Aunderstood that The Colony would bear the cost of transporting
wastewater, and The Colony was always prepared to pay those costs.@  It continues, AThe impediments were access to the plant . . . and capacity
at the plant . . . .@  The Colony thus relies on the
other arguments and evidence addressed above to demonstrate the existence of a
fact issue.

Having reviewed all of The
Colony=s evidence, we hold that The Colony failed to raise a genuine issue of
material fact in response to Frisco=s motion for summary judgment on its breach of contract counterclaim
and that the trial court did not err by granting Frisco=s motion for summary judgment on its breach of contract
counterclaim.  See Tex. R. Civ. P. 166a(a), (c); Jones, 710
S.W.2d at 60.  We overrule the remainder
of The Colony=s first
issue.

IV.  Additional Errors and Harm

In its third issue, The
Colony argues that the trial court=s rulings on the summary judgments taken together with three other
erroneous trial court rulings caused the rendition of an improper
judgment.  See Tex. R. App. P.
44.1(a)(1).  The errors that The Colony
complains of relate to the trial court=s refusal to grant trial amendments, jury charge error, and denial of
The Colony=s post trial
motion to enter judgment rescinding the Contract.

A.     Trial Amendments








The Colony filed its motion
for leave to file trial amendments on November 20, 2006, the final day of
trial.  It requested leave pursuant to
rule of civil procedure 67 to file its second supplemental petition as a trial
amendment, arguing that it had produced unobjected-to evidence at trial in
support of the following legal theories: 
excuse of breach due to prior material breach by the District, novation,
offer of new terms, waiver of nonpayment, failure of consideration, estoppel,
ratification, and failure to mitigate damages. The Colony further requested
leave pursuant to rule of civil procedure 66 to file its third supplemental
petition as a trial amendment, requesting that the trial court vacate its prior
summary judgment orders and reasserting legal theories that were disposed of on
summary judgment and asserting other theories brought up outside the presence
of the jury.  The trial court denied The
Colony=s motion for leave to file the trial amendments.








Rule 67 provides in part, AWhen issues not raised by the pleadings are tried by express or
implied consent of the parties, they shall be treated in all respects as if
they had been raised in the pleadings.@  Tex. R. Civ. P. 67.  The rule of implied consent is only intended
to apply to exceptional circumstances where it clearly appears from the record
that the parties tried the unpleaded issue by consent.  White v. Sullins, 917 S.W.2d 158, 160
(Tex. App.CBeaumont
1996, writ denied).  To decide whether an
issue was tried by consent, we review the record Anot for evidence of the issue, but rather for evidence of trial of the
issue.@  Case Corp. v. Hi-Class Bus.
Sys. of Am., Inc., 184 S.W.3d 760, 771 (Tex.
App.CDallas 2005, pet. denied).  A
party=s unpleaded issue may be deemed tried by consent when evidence on the
issue is developed under circumstances indicating both parties understood the
issue was in the case, and the other party failed to make an appropriate
complaint.  Id.  However, trial by consent is inapplicable
when evidence relevant to an unpleaded matter is also relevant to a pleaded
issue; in that case, admission of the evidence would not be calculated to elicit
an objection, and its admission ordinarily would not demonstrate a Aclear intent@ on the part
of all parties to try the unpleaded issue. 
Id.  The trial court has
great discretion in deciding whether to permit a trial amendment.  See Hardin v. Hardin, 597 S.W.2d 347,
349B50 (Tex. 1980).








Here, the record does not
indicate that both parties understood that the legal theories of excuse of
breach due to prior material breach, novation, offer of new terms, waiver of
nonpayment, failure of consideration, estoppel, ratification, and failure to
mitigate damages were to be tried. 
Rather, Frisco or the District asserted repeated objections to The
Colony=s attempt to elicit testimony regarding issues previously resolved by
the trial court=s summary
judgment orders or other irrelevant issues. 
Moreover, to the extent there is any evidence of the above theories,
that evidence is also relevant to the contractual matters actually at issue in
the trial.  The record does not
demonstrate the parties tried the above theories by consent.  See Case Corp., 184 S.W.3d at 771.  Accordingly, we hold that the trial court did
not abuse its discretion by denying this part of The Colony=s motion for leave to file trial amendments.

Rule 66 governs amendments
during trial.  Tex. R. Civ. P. 66.  Under rule 66, a trial court is required to
freely grant the request unless the opposing party presents evidence of
surprise or prejudice or the amendment asserts a new cause of action or
defense, and thus is prejudicial on its face. 
State Bar of Tex. v. Kilpatrick, 874 S.W.2d 656, 658 (Tex.), cert.
denied, 512 U.S. 1236 (1994). 
An amendment is prejudicial on its face if it asserts a new substantive
matter that reshapes the nature of the trial itself, the opposing party could
not have anticipated the amendment in light of the prior development of the
case, and the opposing party=s presentation of the case would be detrimentally affected.  Dunnagan v. Watson, 204 S.W.3d 30, 38
(Tex. App.CFort Worth
2005, pet. denied).













The Colony=s third amended supplemental petition alleged that Frisco and the
District committed statutory fraud and negligent misrepresentation; that Frisco
Aintentionally interfered with the District=s and Plaintiff=s attempts
to perform under the contract, which interference was a proximate cause of
Plaintiff=s actual
damage@; that Frisco=s Acity manager acted with apparent authority in interfering with the
District=s and Plaintiff=s attempts
to perform under the [C]ontract@; that Frisco and the District engaged in a joint enterprise to
prevent The Colony from gaining access to the wastewater treatment plant; and
that Frisco and the District engaged in a civil conspiracy.  None of these new causes of action were
pleaded in The Colony=s third
amended petition, and, consequently, none of the theories were at issue when
the trial court ruled on Frisco=s and the District=s motions for summary judgment. 
The issues remaining to be resolved at trial were clear, and Frisco=s and the District=s presentation of their cases would have been detrimentally affected
had the trial court granted the amendment because the new theories would have
reshaped the nature of the trial.  See
Dunnagan, 204 S.W.3d at 38.  We hold
that the trial court did not abuse its discretion by denying this part of The
Colony=s motion for leave to file trial amendments.  And we hold that the trial court=s ruling denying The Colony=s motion for leave to file trial amendments did not prevent The Colony
from properly presenting its case to this court.  See Tex. R. App. P. 44.1(a)(2)
(stating that no judgment may be reversed on appeal on the ground that the
trial court made an error of law unless the court of appeals concludes that the
error complained of probably prevented the appellant from properly presenting
the case to the court of appeals).  To
the extent The Colony intends to raise any other arguments under this issue
that we have not addressed immediately above, they are waived.  See Tex. R. App. P. 38.1(h) (stating
that appellate brief must contain a clear and concise argument for the
contentions made with appropriate citations to authorities and the
record).  We overrule this part of The
Colony=s third issue.

B.      Jury Charge

The Colony argues that the
trial court=s rulings on
the summary judgments and trial amendments Ahad an improper adverse effect on the ensuing jury charge.@  It specifically complains of the trial court=s refusal to submit a question asking whether The Colony=s breach, if any, was excused.

A party is entitled to a jury
question, instruction, or definition that is raised by the pleadings and
evidence.  Tex. R. Civ. P. 278; Union Pac. R.R. Co. v.
Williams, 85 S.W.3d 162, 166 (Tex. 2002). 
This is a substantive, nondiscretionary directive to trial courts,
requiring them to submit requested questions to the jury if the pleadings and
any evidence support them.  Elbaor v.
Smith, 845 S.W.2d 240, 243 (Tex. 1992).








The trial court has broad
discretion in submitting jury questions so long as the questions submitted
fairly place the disputed issues before the jury.  TXI Transp. Co. v. Hughes, 224 S.W.3d
870, 900 (Tex. App.CFort Worth
2007, pet. granted).  This broad
discretion is subject only to the limitation that controlling issues of fact
must be submitted to the jury.  Id.;
see also Tex. R. Civ. P.
278.  Rule 277 also affords the trial
court considerable discretion in deciding what instructions are necessary and
proper.  State Farm Lloyds v. Nicolau,
951 S.W.2d 444, 451B52 (Tex.
1997).  Indeed, a trial court is afforded
even more discretion when submitting instructions than when submitting
questions.  Wal-Mart Stores, Inc. v.
Middleton, 982 S.W.2d 468, 470 (Tex. App.CSan Antonio 1998, pet. denied).

The standard of review for
error in the jury charge is abuse of discretion, which occurs only when the
trial court acts arbitrarily, unreasonably, or without reference to guiding
rules or principles.  In re V.L.K.,
24 S.W.3d 338, 341 (Tex. 2000); Aquamarine Operators, Inc. v. Downer,
701 S.W.2d 238, 241B42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986).








The Colony argues that the
pleadings and evidence raised a fact issue regarding whether The Colony=s breach of the Contract might have been excused, but the contention
that a party to a contract is excused from performance because of a prior
material breach by the other contracting party is an affirmative defense that
must be affirmatively pleaded or it is waived. 
See Compass Bank v. MFP Fin. Servs., 152 S.W.3d 844, 852 (Tex.
App.CDallas 2005, pet. denied); RE/MAX of Tex., Inc. v. Katar Corp.,
961 S.W.2d 324, 327 (Tex. App.CHouston [1st Dist.] 1997, pet. denied); see also Hassell Constr.
Co., Inc. v. Stature Commercial Co. Inc., 162 S.W.3d 664, 667 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
The Colony never pleaded that it was discharged or excused from
performing under the Contract because of a prior material breach by either Frisco
or the District, nor do we find that such an affirmative defense was tried by
consent.  Thus, the Colony=s live pleadings do not support a jury question on the defense of
excuse.  See Williams, 85 S.W.3d
at 166. 

Moreover, as Frisco points
out, the trial court had already granted Frisco summary judgment on its
counterclaim that The Colony breached the Contract.  The only issue to be determined at trialCbesides whether the District breached the ContractCwas damages for the breach. 
Whether The Colony=s breach was
excused was beyond the scope of the issues at trial.

We hold that the trial court
did not abuse its discretion by refusing to submit a question asking whether
The Colony=s breach, if
any, was excused.  We further hold that
the trial court=s ruling
refusing to submit a jury question on excuse did not prevent The Colony from
properly presenting its case to this court. 
See Tex. R. App. P. 44.1(a)(2). 
We overrule this part of The Colony=s third issue.

C.     Entry of Judgment








The Colony also complains of
the trial court=s judgment,
particularly the portion of it stating that the Contract Ais a valid, unambiguous and enforceable agreement.@  Citing Athe jury findings, supporting pleadings and evidence, and public
policy arguments,@ The Colony
contends that the trial court erred by refusing The Colony=s request to enter judgment rescinding the Contract.

The trial court granted
Frisco=s and the District=s motions for summary judgment on The Colony=s claims for rescission.  The
trial court also granted in part the District=s request for a declaration when it ordered in its summary judgment
order granting the District=s motion that the Contract Ais a valid, unambiguous, enforceable agreement.@  We overrule this part of The
Colony=s third issue, and we overrule the remainder of The Colony=s third issue insofar as it complains of cumulative error that
prevented it from properly presenting part of its case to this court.

V.  Frisco=s Appeal and the District=s Appeal

In two issues, Frisco argues
in its appeal that the evidence is legally and factually insufficient to
support the jury=s findings
awarding Frisco $0.00 for both The Colony=s failure to comply with the Contract and for Frisco=s attorneys= fees on
appeal.








In three issues, the District
argues in its appeal that the trial court erred by overruling its motion to
disregard the jury=s finding
that the District materially breached the Contract and that the evidence is
legally and factually insufficient to support the jury=s findings (1) that the District materially breached the Contract by
failing to have adequate capacity and (2) awarding the District $0.00 for
attorneys= fees.

A.     Standards of Review

1.      Legal Sufficiency

We may sustain a legal
sufficiency challenge only when (1) the record discloses a complete absence of
evidence of a vital fact, (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact,
(3) the evidence offered to prove a vital fact is no more than a mere scintilla,
or (4) the evidence establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of
Error, 38 Tex. L. Rev. 361, 362B63 (1960).  In determining
whether there is legally sufficient evidence to support the finding under
review, we must consider evidence favorable to the finding if a reasonable
factfinder could and disregard evidence contrary to the finding unless a
reasonable factfinder could not.  City
of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005).








Anything more than a
scintilla of evidence is legally sufficient to support the finding.  Cont=l Coffee Prods. Co. v. Cazarez, 937 S.W.2d
444, 450 (Tex. 1996); Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.
1996).  More than a scintilla of evidence
exists if the evidence furnishes some reasonable basis for differing
conclusions by reasonable minds about the existence of a vital fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins. Co., 77 S.W.3d
253, 262 (Tex. 2002).

If a party is attacking the
legal sufficiency of an adverse finding on an issue on which the party had the
burden of proof, the party must demonstrate on appeal that the evidence
establishes, as a matter of law, all vital facts in support of the issue.  Dow Chem. Co. v. Francis, 46 S.W.3d
237, 241 (Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690
(Tex. 1989).  We first examine the record
for evidence that supports the finding, while disregarding evidence to the
contrary when reasonable to do so.  Dow
Chem. Co., 46 S.W.3d at 241; see also City of Keller, 168 S.W.3d at
827.  If there is no evidence to support
the finding, we will then examine the entire record to determine if the
contrary proposition is established as a matter of law.  Dow Chem Co., 46 S.W.3d at 241; Sterner,
767 S.W.2d at 690.








AWhen a court
of appeals disturbs the judgment of a lower tribunal, merely saying that the
court has reviewed all the evidence and reaching a conclusion contrary to that
of the trier of fact is not enough. 
Instead, the court should explain, with specificity, why it has
substituted its judgment for that of the trial court.@  Citizens Nat=l Bank in Waxahachie v. Scott, 195 S.W.3d
94, 96 (Tex. 2006).  When we sustain a
legal sufficiency issue, it is our duty to render judgment for the appellant
because that is the judgment the trial court should have rendered.  See Tex. R. App. P. 43.3; Vista Chevrolet, Inc. v.
Lewis, 709 S.W.2d 176, 176 (Tex. 1986).

2.      Factual Sufficiency

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406B07 (Tex.), cert.
denied, 525 U.S. 1017 (1998). 

When reviewing an issue
asserting that a finding is Aagainst the great weight and preponderance@ of the evidence, we must consider and weigh all of the evidence and
set aside the finding only if the evidence is so weak or the finding is so
contrary to the great weight and preponderance of the evidence as to be clearly
wrong and unjust.  Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001); In re King=s Estate, 150 Tex. 662, 244 S.W.2d
660, 661 (1951).

 








B.      Frisco=s Challenge to the Jury=s Finding of $0.00 Damages

Frisco argues that it
established as a matter of law that it was damaged in the amount of $642,863.98
for The Colony=s breach of
the Contract.  Frisco had the burden of
proof on this issue at trial. 

The jury has discretion to
award damages within the range of evidence presented at trial.  Dunnagan, 204 S.W.3d at 47.  A jury may not, however, arbitrarily assess
an amount neither authorized nor supported by the evidence presented at
trial.  Id. 

There is no evidence that
Frisco=s damages for The Colony=s failure to comply with the Contract are $0.00.  We now examine the record to determine if a
particular value of Frisco=s damages was established as a matter of law.  See Dow Chem Co., 46 S.W.3d at 241; Sterner,
767 S.W.2d at 690; see also Kitchen v. Frusher, 181 S.W.3d 467, 473
(Tex. App.CFort Worth
2005, no pet.).








Judd Sanderson is the
District=s director of finance.  He
testified that the District issued approximately $7 million in bonds in 1998 to
fund the expansion and construction of the plant.  The issuance of the bonds, which are to be
repaid over twenty years, thus created debt. 
Under the terms of the Contract, The Colony and Frisco are required to
make debt service payments that repay the bond obligations.  There are no other sources of funds that the
District has to repay the bonds issued to finance the plant=s expansion because The Colony and Frisco are the only two participants
under the Contract.

Sanderson testified that The
Colony quit making payments to the District 
under the Contract around October 2002. 
Cheatham acknowledged that The Colony did not make contractual payments
for the fiscal years 2004, 2005, 2006, and 2007.[12]  Frisco funded The Colony=s share of the payments thereafter. 
Through November 16, 2006, Frisco had paid $642,863.98 on The Colony=s behalf.  The trial court
admitted into evidence checks reflecting Frisco=s payments to the District.

The Colony cross-examined
Sanderson about an $11,000 underpayment by The Colony in 2002 that Frisco ended
up Apicking up@ for The
Colony. Sanderson testified that he did not personally contact someone at The
Colony to discuss the underpayment but that someone at the District did.  The Colony also questioned Sanderson whether
notice was given to The Colony about the remaining underpayments under the
Contract, and he concluded that notice was sent to The Colony when it stopped
making payments.  The Colony=s cross-examination of Sanderson thus focused only on the issue of
notice.













The Colony contends that the
damages evidence is disputed and controverted because AFrisco refused to grant easements for pipeline construction or
permission to tap into existing pipelines to the Plant,@ AThe Colony
was deprived of the entire benefit of the agreement,@ AThe Colony=s expert witness testified that [the District] had failed to provide
adequate capacity to treat its wastewater,@ AFrisco
refused to cooperate and impliedly instructed [the District] not to cooperate
either,@ and The Colony was Aforced to spend over twelve million dollars in upgrading and expanding
its existing treatment plant.@  The Colony also directs us to
Purefoy=s testimony in which he acknowledged that Athe jurors should review the documents >to determine whether or not the City of The Colony owes you any money=@ and Aconceded on
the stand that the jury may need to review every one of the invoices and
determine how the payments should be allocated.@  But the trial court=s order granting Frisco=s motion for summary judgment on its counterclaim makes clear that the
sole issue held over for trial on the counterclaim was damages and attorneys= fees.  This evidence either
re-asserts issues and evidence relevant to matters resolved by the trial court=s grant of summary judgment on The Colony=s claims (pipeline and easement issues, consideration, Arefusal@ to
cooperate) or points out evidence relevant only to The Colony=s claim that the District breached the Contract (i.e., lack of
capacity and $12 to $13 million spent on its own treatment plant).  None of it is evidence controverting or
disputing Sanderson=s testimony
that Frisco paid $642,863.98 under the Contract on behalf of The Colony.

By its reliance on the
evidence above, The Colony seems to be arguing that it should not have to pay
monies owed under the Contract because of the actions of Frisco and the
District.  It thus contends that we Ashould presume that the jurors reasonably believed that The Colony=s obligation to perform was excused due to a prior material breach of
the contract.@  The Colony argues that a reasonable juror
could conclude Athat The
Colony was deprived of the entire benefit it reasonably expected under the
agreement,@ Athat The Colony was never compensated for that deprivation,@ and Athat neither
Frisco nor [the District] was deprived of any benefits they anticipated under
the [C]ontract.@  As mentioned above, the contention that a
party to a contract is excused from performance because of a prior material
breach by the other contracting party is an affirmative defense that must be
affirmatively pleaded.  Compass Bank,
152 S.W.3d at 852.  The Colony never
pleaded that it was discharged or excused from performing under the Contract
because of a prior material breach by either Frisco or the District, nor do we
find that such an affirmative defense was tried by consent.








We have examined the entire
record.  Sanderson=s testimony was clear, direct, and uncontroverted.  The jury=s $0.00 damages finding was arbitrary. 
We hold that Frisco established as a matter of law that it was damaged
in the amount of $642,863.98 for The Colony=s failure to comply with the Contract. 
The evidence is thus legally insufficient to support the jury=s finding awarding $0.00 for The Colony=s failure to comply with the Contract. 
See Dow Chem Co., 46 S.W.3d at 241; Sterner, 767 S.W.2d at
690; see also Howell Pipeline Tex., Inc. v. ExxonMobile Pipeline Co.,
No. 14-02-00387-CV, 2003 WL 22436919, at *2 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (AWhile it is generally within the province of jurors to set damages,
they cannot ignore the undisputed facts and arbitrarily deny any recovery.@).  Accordingly, we sustain
Frisco=s first issue.

C.     District=s Challenge to Breach-Capacity Finding

In its second issue, the
District argues that the evidence is legally and factually insufficient to
support the jury=s finding to
question one, part (B) that the District materially breached the Contract by
failing to have adequate capacity.[13]  The Colony had the burden of proof on this
issue at trial.








Parks testified that the
plant had a capacity of 1.5 million gallons per day when the Contract was
executed in May 1998.  Prior to the
Contract=s execution, the District had filed for a permit to expand the plant=s capacity to five million gallons per day.  The plant was subsequently expanded to a
capacity of five million gallons per day sometime in 2001 at a cost of
approximately $7 million.  The Colony did
not have a wastewater pipeline that connected to the plant when the Contract
was executed.

The Colony was Ahaving trouble@ with its
wastewater treatment plant sometime in 2003, and they were Alooking at options, multiple options@ to address these issues.  The
Colony and the District had meetings in 2003 regarding wastewater
transportation and flow numbers.

Frisco=s average flow at the plant in 2003 was between 3.1 and 3.3 million
gallons per day.  Parks sent a letter to
Cheatham in April 2003, stating that they had met on April 3, 2003, Ato discuss future wastewater service to The Colony.@  Parks indicated in the letter
that The Colony=s flow to
the plant would have to be staged because there was insufficient capacity at
the plant Ato suddenly
shut down The Colony=s wastewater
treatment plant and transport all of that flow to the Stewart Creek West
Regional Plant.@








An August 2003 administrative
memorandum prepared by Parks stated that at the time, The Colony=s treatment plant had a flow of 2.3 million gallons per day.  According to Parks, AIf The Colony=s treatment
plant was closed and all of the flow was transferred to the Stewart Creek West
Regional WWTP [the plant], it would put the regional plant over its capacity.@  Parks stated that The Colony
had commissioned an engineering study that recommended The Colony construct
facilities to transfer a portion of flow to the plant, and A[w]hen there is adequate treatment capacity at the [plant], The Colony plans to close [its] treatment plant and transfer all@ of its wastewater flow to the plant. [Emphasis added.]  A September 2003 District administrative
memorandum states that The Colony has Aasked [the District] to consider treating all The Colony=s flow at the Stewart Creek West Plant.@

The Contract also requires
the District to give notice when it has the capability to receive wastewater in
the System.  Parks did not recall the
District=s sending notice to The Colony that it had the capability to receive
wastewater at the point of entry.








Parks testified about the A75/90" rule, which provides Athat when you reach 75 percent of the capacity of a plant, you need to
begin considering expansion of the plant or ways to reduce flow to that plant.@  According to Parks, the plant
was at 75 percent capacity in 2003, 2004, and 2005.  He testified that the District was
contemplating an expansion of the plant in 2003, which would take between two
and three years to complete, but the decision was made to not expand the
plant.  Parks agreed, however, that the
plant would have to be expanded if The Colony was going to transfer all of its
wastewater (2.1 or 2.3 million gallons per day) to the plant.

Dobbs, a District planning
officer, testified that he had numerous meetings with The Colony, that The
Colony sent him several different flow numbers between 2001 and 2004, and that
The Colony expressed its desire to connect to the plant.

The District argues that the
evidence is insufficient to support the jury=s finding regarding insufficient capacity because it was impossible
for The Colony to transport all of its wastewater to the plant at once.  According to the District, because it would
take time for The Colony to make preparations for the transportation of its
wastewater to the plant, the District would have had time itself to make
preparations for treating The Colony=s flows.  The District directs
us to the portion of the Contract that allows the District to use other
facilities to treat wastewater and evidence that the District was constructing
the Panther Creek wastewater treatment facility, which was supposed to be Aonline@ sometime in
2007 or 2008 and would have reduced the capacity being used at the plant.








Applying the applicable
standards of review, we hold that the evidence is legally and factually
sufficient to support the jury=s finding to question one, part (B) that the District materially
breached the contract for failing to have adequate capacity.  See Martinez, 977 S.W.2d at 334; Garza,
395 S.W.2d at 823.  We overrule the
District=s second issue.

D.     Immaterial Finding

In its first issue, the
District argues that the trial court erred by overruling its motion to
disregard jury findings and for judgment notwithstanding the verdict.  Specifically, it argues that the jury=s finding to question one, part (B) that the District breached the
Contract for failing to have adequate capacity was rendered immaterial by its
finding in question two that the District=s breach was excused by The Colony=s previous material breach of the Contract.

A trial court may disregard a
jury=s answer to a question in the charge only when the answer has no
support in evidence or the question is immaterial.  Tex. R. Civ. P. 301; Spencer v. Eagle Star
Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994).  A jury question is immaterial when it should
not have been submitted, it calls for a finding beyond the province of the
jury, such as a question of law, or when it was properly submitted but has been
rendered immaterial by other findings.  Se.
Pipeline Co. v. Tichacek, 997 S.W.2d 166, 172 (Tex. 1999).  The District relies on the third ground.








The District=s sole argument is based on an analogization between the facts of this
case and those in Hooker v. Nguyen, No. 14-04-00238-CV, 2005 WL 2675018,
at *8B11 (Tex. App.CHouston
[14th Dist.] 2005, pet. denied) (mem. op.). 
In that Adifficult
and convoluted@ case,
Hooker contracted with Nguyen for Nguyen to perform construction work on a
salon.  Id. at *1.  Both parties eventually sued each other for
breach of contract, among other things.  Id.
at *3.  The jury found in part that both
Hooker and Nguyen failed to comply with the agreement.  Id. 
The judgment awarded Nguyen actual and exemplary damages and found that
Hooker failed to make prompt payment and that the failure to make prompt
payment was unexcused.  Id.








Hooker argued in part on
appeal that the jury=s finding
that he failed to comply with the contract should have been disregarded as
immaterial because he Aproved
conclusively that Nguyen failed to comply with the contract before Hooker
refused to make the final payment that would have been due under the contract,@ which excused Hooker=s performance.  Id. at *8.  Relying on the Awell-settled principle in Texas law that when a party to a bilateral
contract commits a material breach of that contract, the other party is
discharged or excused from further performance,@ the court agreed with Hooker and held that the trial court should
have disregarded the jury=s answers to
the questions regarding Hooker=s breach because the evidence demonstrated that Nguyen committed a
material breach as a matter of law, and Hooker was thereafter discharged from
his duties under the contract.  Id.
at *8B11; see also Mustang Pipeline Co., Inc. v. Driver Pipeline Co.,
Inc., 134 S.W.3d 195, 196 (Tex. 2004) (discussing Awell-settled principle@).

Hooker is distinguishable from the facts of this case because the trial court
declared and ordered in its final judgment Athat the Stewart Creek West Regional Wastewater System Contract
entered into May 28, 1998 by and between Plaintiff City of The Colony,
Defendant NTMWD and Defendant City of Frisco is a valid, unambiguous[,] and
enforceable agreement.@  This is a declaration rendered at the
District=s insistence.[14]  In one of its other briefs, the District,
consistent with this portion of the judgment, argues the following:

It
should be noted that the Contract has not been terminated by the District;
rather, the Stewart Creek West Plant remains available for use by the
Colony.  Under the terms of the Contract,
the Colony continues to owe monthly payments to the [District] for its share of
the expenses associated with the Plant expansion.

 

The District further argued:








[T]here
is ample authority for the proposition that in a breach of contract suit such
as the case at bar, the plaintiff (or in this case, counter-plaintiff) may
either Aterminate@ the
contract and sue the defendant for the present value of all future payments
owed by the breaching defendant, or as was done in this case, continue to treat
the contract as ongoing (not terminated) and sue for any later breaches if and
when that becomes necessary. . . . [The District] has chosen this
route, which is its right.

 

Unlike in Hooker, in which the appellate
court determined that Hooker was discharged from his duties under the contract
after Nguyen=s material
breach, the District has expressly taken the position, according to Aits right,@ that the
Contract is ongoing, whichCfollowing its argumentCmeans that its obligation under the Contract to provide wastewater
treatment to The Colony has not been discharged.  See Hooker, 2005 WL 2675018, at
*10.  The District=s reliance on Hooker is misplaced because of this fundamental
factual distinction.  The District
asserts no other argument in support of this issue.  To the extent the District argues that the
jury=s finding to question one, part (B) was rendered immaterial by the
jury=s finding to question two, we hold that the trial court did not err by
denying the District=s motion to
disregard jury findings and for judgment notwithstanding the verdict.  See Tichacek, 997 S.W.2d at 172.  Accordingly, we overrule the District=s first issue.

E.      Attorneys= Fees

1.      Frisco=s Appellate Attorneys= Fees

In its second issue, Frisco
argues that it established as a matter of law during the trial that its
necessary and reasonable appellate attorneys= fees totaled $70,000.00.








The record demonstrates that
Frisco requested the award of attorneys= fees under the Uniform Declaratory Judgment Act (AUDJA@).  See Tex. Civ. Prac. & Rem. Code
Ann. ' 37.009 (Vernon 2008). 
Although the jury awarded Frisco reasonable and necessary attorneys= fees for preparation of trial in the amount of $83,200.00, it awarded
Frisco reasonable and necessary attorneys= fees in the amount of $0.00 for an appeal to the court of appeals,
for making or responding to a Apetition for writ review to the Supreme Court of Texas,@ and if a petition for review is granted by the supreme court.  Frisco challenged the $0.00 appellate
attorneys= fees award
in both its motion for judgment notwithstanding the verdict and its motion for
new trial.[15]  Frisco affirmed at the hearing on its motion
for judgment notwithstanding the verdict that it had sought to recover
attorneys= fees
pursuant to section 37.009.








Section 37.009 provides that A[i]n any proceeding under this chapter, the court may award costs and
reasonable and necessary attorney=s fees as are equitable and just.@  Id.  It imposes four limitations on the trial
court=s discretion:  the fees awarded
must be reasonable and necessary, which are matters of fact, and they must be
equitable and just, which are matters of law. 
Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998); Hunt v.
Baldwin, 68 S.W.3d 117, 135 (Tex. App.CHouston [14th Dist.] 2001, no pet.); Hansen v. Academy Corp.,
961 S.W.2d 329, 333 (Tex. App.CHouston [1st Dist.] 1997, writ. denied).

The award of attorneys= fees under the UDJA is not dependent upon a finding that the party
prevailed.  Barshop v. Medina County
Underground Water Conservation Dist., 925 S.W.2d 618, 637 (Tex. 1996).  Although the trial court may submit a
question to the jury on the amount of reasonable and necessary attorneys= fees, it retains the authority to award or deny attorney=s fees.  Hansen, 961
S.W.2d at 333B34.

The determination to award
attorneys= fees is
thus solely within the sound discretion of the trial court.  Hunt, 68 S.W.3d at 135.  We can reverse the trial court=s decision only if the complaining party shows a clear abuse of
discretion.  Oake v. Collin County,
692 S.W.2d 454, 455 (Tex. 1985).








In reviewing a fee award
under the UDJA, we must determine whether the trial court abused its discretion
by awarding fees when there was insufficient evidence that the fees were
reasonable and necessary or when the award was inequitable or unjust.  Bocquet, 972 S.W.2d at 21.  Conversely, in reviewing a trial court=s decision to not award attorneys= fees, we must examine whether the complaining party established not
only that the fees sought are reasonable and necessary, but also that the award
is equitable and just.  Abraxas
Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 763 (Tex. App.CEl Paso 2000, no pet.); Trien v. Equity Real Estate, Inc., No.
08-99-00464-CV, 2001 WL 1383115, at *5B6 (Tex. App.CEl Paso Nov.
8, 2001, no pet.) (not designated for publication); see also Tex. Civ.
Prac. & Rem. Code Ann. ' 37.009.








Frisco argues that it proved
$70,000.00 in reasonable and necessary appellate attorneys= fees as a matter of law, but it does not set forth any argument or
analysis in its briefing that an award of $0.00 for appellate attorneys= fees is inequitable or unjust.[16]  See Karen Corp. v. Burlington N. & Santa
Fe Ry. Co., 107 S.W.3d 118, 126B27 (Tex. App.CFort Worth
2003, pet. denied) (considering sufficiency of evidence and justness of
attorneys= fees
awarded under section 37.009); Heritage Res., Inc. v. Hill, 104 S.W.3d
612, 619B22 (Tex. App.CEl Paso
2003, no pet.) (same).  This is an issue
addressed to the trial court=s sole discretion.  Considering
the record, the trial court may have concluded that it would not have been
equitable or just to award Frisco any reasonable and necessary appellate attorneys= fees, as it is permitted to do. 
See Bocquet, 972 S.W.2d at 21 (AUnreasonable fees cannot be awarded, even if the court believed them
just, but the court may conclude that it is not equitable or just to award even
reasonable and necessary fees.@).  Consequently, Frisco has
failed to demonstrate that the trial court clearly abused its discretion by not
awarding Frisco appellate attorneys= fees.  See Hunt, 68
S.W.3d at 136; Abraxas, 20 S.W.3d at 763; Hansen, 961 S.W.2d at
333B34; Trien, 2001 WL 1383115, at *6.  We overrule Frisco=s second issue.

2.      District=s Attorneys= Fees

In its third issue, the District
argues that the evidence at trial conclusively established as a matter of law
that its reasonable attorneys= fees totaled the following: 
$130,000.00 through trial; $15,000.00 on appeal; $7,500.00 for making or
responding to a petition for review to the supreme court; and $2,500.00 if a
petition for review is granted by the supreme court.  It contends that it is entitled to recover
its fees under both section 37.009 and 38.001 of the civil practice and
remedies code.








The District asserted two
counterclaims against The Colony in its first amended answer and original
counterclaim, one for breach of contract and one for a declaration that the
Contract is valid and enforceable and that The Colony is required to continue
making payments to the District.  It
sought attorneys= fees under
civil practice and remedies code sections 37.009 and 38.001.  The jury awarded the District $0.00 for its
reasonable and necessary attorneys= fees.  The District challenged
the jury=s findings in its motion for judgment notwithstanding the verdict and
motion for new trial.








Applying the same standards
articulated above relevant to an analysis of section 37.009 attorneys= fees, we address the District=s argument that it is entitled to recover attorneys= fees under section 37.009 first. 
The District states that Athe trial court erred@ by overruling its motion for judgment notwithstanding the verdict and
motion for new trial and that the trial court=s decision to not award attorneys= fees is Amanifestly
unjust.@  The District thus challenges
the trial court=s decision
to not award attorneys= fees.  Liberally construing the District=s brief, as we must, the only argument that the District makes that
comes close to contending that the award of $0.00 for attorneys= fees is inequitable or unjust is the District=s argument that the evidence established that the District was
entitled to attorneys= fees as a
matter of law.  See Tex. R. App.
P. 38.9.  But the award of $0.00 for
attorneys= fees is not
inequitable or unjust solely because the evidence established that the District
was entitled to attorneys= fees as a
matter of law (assuming without deciding that is the case).  As with Frisco, the trial court may have
concluded that in light of the record, it would not have been equitable or just
to award even reasonable and necessary attorneys= fees.  See Bocquet, 972
S.W.2d at 21.  The District sets forth no
other argument or evidence that the award of $0.00 for attorneys= fees is inequitable or unjust. 
Nor is there anything in the record to show that the trial court abused
its discretion by not awarding attorneys= fees to the District. 
Consequently, the District failed to demonstrate that the trial court
clearly abused its discretion by not awarding it attorneys= fees pursuant to civil practice and remedies code section
37.009.  See Hunt, 68 S.W.3d at
136; Abraxas, 20 S.W.3d at 763; Hansen, 961 S.W.2d at 333B34; Trien, 2001 WL 1383115, at *6.  We overrule this part of the District=s third issue.

Section 38.001 of the civil
practice and remedies code permits the recovery of attorneys= fees if the claim is for an oral or written contract.  Tex. Civ. Prac. & Rem. Code Ann. ' 38.001(8).  To recover
attorneys= fees under
section 38.001, a party must both prevail on a claim for which attorneys= fees are recoverable and recover damages.  Green Intern., Inc. v. Solis, 951
S.W.2d 384, 390 (Tex. 1997).








Here, as alluded to above,
the District asserted a counterclaim for breach of contract and a counterclaim
under the UDJA seeking two declarations: 
(1) Athe Contract
between the District and The Colony is valid and enforceable@ and (2) AThe Colony
is required to pay the payments to the District for the remaining term of the
Contract.@  The trial court=s summary judgment order grants the District summary judgment on all
but one of The Colony=s causes of action and (only) orders that the Contract is a Avalid, unambiguous, enforceable agreement.@  The order does not
specifically state that it was granting the District=s motion for summary judgment on its breach of contract counterclaim
or the District=s request
for a declaration that The Colony is in material breach of its obligations to
make payments to the District under the Contract.  The order provides at its conclusion Athat to the extent not specifically granted herein, Defendant NTMWD=s First Amended Traditional Motion for Summary Judgment and
No-Evidence Motion for Summary Judgment is DENIED.@

The final judgment does not
award the District any damages for The Colony=s breach of the Contract.  We
hold that the District is not entitled to attorneys= fees under section 38.001.  See
Solis, 951 S.W.2d at 390.  We overrule
the remainder of the District=s third issue.

VI.  Conclusion








Having overruled The Colony=s three issues, we affirm the trial court=s judgment as to The Colony=s appeal.  Having overruled the
District=s three issues, we affirm the trial court=s judgment as to the District=s appeal.  Having sustained
Frisco=s first issue, we render judgment awarding Frisco $642,863.98 for The
Colony=s failure to comply with the Contract; we affirm the remainder of the
trial court=s judgment.

 

DIXON W. HOLMAN

JUSTICE

PANEL: 
LIVINGSTON, HOLMAN, and GARDNER, JJ.

DELIVERED: 
November 26, 2008











[1]According to the contract
subsequently executed by the parties, Athe District [was] currently operat[ing] a wastewater
treatment plant, known as the >Stewart Creek West Plant= [the plant the subject of the Contract] . . .[,]
on behalf of Frisco.@ 
This is a separate plant from The Colony=s Stewart Creek Plant.





[2]Antonio Johnston, The Colony=s assistant city manager since
2001, agreed that Lambert Ahas the most knowledge and best understanding of the
negotiations before and leading up to and entry into the contract.@





[3]According to Lambert, AIt was my understanding after much
discussion that [Purefoy] and [Frisco] concluded that if we [The Colony] paid
our fair share and we participated in the cost, that it would lower their costs
. . . .@





[4]For instance, under AScenario Number 1,@ the first few alternatives called
for use of existing Frisco easements or utilities.  But Alternate 3 assumed that Frisco did not
permit use of its pipelines, and it provided for a scenario whereby The Colony
would be required to obtain its own easements through the process of
condemnation.





[5]We thus do not construe the
District=s motion as moving for summary
judgement on no evidence grounds on all of The Colony=s claims.  Unlike Frisco=s motion, which combined its
traditional and no evidence grounds for summary judgment on each of The Colony=s claims and specifically
articulated that there is no evidence to support the challenged element or claim,
the District=s motion is separated into ATraditional@ and ANo Evidence@ sections, it primarily cites rule
of civil procedure 166a(c) throughout its ATraditional Motion for Summary Judgment@ section, and the ANo Evidence Motion for Summary
Judgment@ section specifically articulates
nine grounds in which the District claims there is no evidence in support
thereof.  Consequently, pursuant to the
applicable standard of review, we will consider these nine grounds under the no
evidence standard, but we will consider the other grounds for summary judgment
under the traditional standard.





[6]The
Colony submitted the same summary judgment evidence in response to both Frisco=s and
the District=s
motions for summary judgment, with the exception of an Aexpert
report,@ an
administrative memorandum published by the District, the deposition of James
Parks, Johnston=s
2006 deposition, District responses to The Colony=s
requests for admission, correspondence between Purefoy and Cheatham, and a
letter from Frisco=s
mayor to Parks.  The Colony=s
summary judgment evidence consists of Johnston=s
2005 deposition, Cheatham=s
deposition, Dillard=s
deposition, Lambert=s
deposition, Baddaker=s
deposition, Randel Dobbs=s
deposition, the personal notes of Dobbs, an administrative memorandum published
by the District, the Contract, and the Ared book.@





[7]According
to Cheatham and Johnston, The Colony would have had access to Frisco=s
pipelines or easements had it agreed to Frisco=s
terms, but it chose not to make a deal.





[8]We, of course, must also determine
whether the trial court erred by granting the District summary judgment on The
Colony=s rescission theories.





[9]Thus, although we held above that
the trial court erred by granting Frisco summary judgment on its ratification
affirmative defense, Frisco was nonetheless entitled to summary judgment on The
Colony=s rescission claims.





[10]Although the System Ainitially@ consists of the plant, section
2.01 provides that the District Ashall have the right to provide single plants, multiplants,
or combine two or more plants, and to use or discontinue the use of any
facility of the System as the District deems necessary.@





[11]There are two exhibits to the
Contract.  Exhibit AA@ is designated, APoints of Entry,@ and Exhibit AB@ is designated, AAll wastewater treatment
facilities, structures, apparatus, equipment, and devices located on the
following described property as of the date of the Contract.@

 





[12]Cheatham testified that it Amay be true@ that The Colony did not make
contractual payments for the fiscal years 2002 and 2003.





[13]The District does not argue that
the trial court erred by submitting question one, part (B).





[14]The
trial court=s
order granting the District=s motion for summary judgment
orders that the Contract Ais a
valid, unambiguous, enforceable agreement.@  The Colony did not challenge this part of the trial court=s order in this appeal.





[15]The
trial court overruled the motion for judgment notwithstanding the verdict in
its final judgment.  The motion for new
trial was overruled by operation of law. 
See Tex. R. Civ. P. 329b(c).





[16]Frisco=s sole argument in its opening
brief is that the evidence at trial conclusively established that its necessary
and reasonable attorneys= fees on appeal total
$70,000.00.  It argues for the first time
in its reply brief that Athe trial court erred when the
court awarded Frisco all of its trial fees but then completely denied Frisco=s appellate fees.@ 
To the extent this argument has any bearing on this issue, the argument
has not been preserved for appellate review. 
See Gray v. Woodville Health Care Ctr., 225 S.W.3d 613, 620 (Tex.
App.CEl Paso 2006, pet. denied)
(reasoning that issue raised for the first time in reply brief not preserved
for appeal); Howell v. Tex. Workers= Comp. Comm=n, 143 S.W.3d 416, 439 (Tex. App.CAustin 2004, pet. denied)
(reasoning that the rules of appellate procedure do not allow an appellant to
include in a reply brief a new issue not raised in its original brief); see
also Tex. R. App. P. 38.3.